465 So.2d 235 (1985)
John TATE, Plaintiff-Appellee,
v.
TRINITY UNIVERSAL INSURANCE COMPANY, et al., Defendants-Appellants.
No. 84-143.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*236 Stafford, Stewart & Potter, Russell L. Potter and Bradley Gadel, Alexandria, for defendants-appellants.
Eugene Cicardo, Sr., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is the correctness of the trial court's award of damages.
This is a slip and fall case where the plaintiff, John Tate, sought damages for personal injuries sustained as a result of slipping and falling in a foreign substance on the floor of the grocery store of the defendant, Piggly Wiggly Food Stores, in Pineville, Louisiana. At the beginning of the trial, the defendants and their insurer, stipulated their liability leaving the amount of damages as the sole issue to be determined by the trial court.
At the conclusion of the trial the trial judge awarded the sum of $1,925.00 for past medical expenses; $6,758.00 for past loss of wages, and $40,000.00 for general damages. The defendant has appealed from that judgment maintaining that the trial court's award of general damages is excessive. The plaintiff answered the appeal seeking an increase in the amount of general damages and also seeking an award of future lost wages. We affirm.
On December 15, 1981, plaintiff was shopping in the Piggly Wiggly Food Store in Pineville, Louisiana. He stepped in a foreign substance on the floor and his feet slipped out from under him, causing his left hip area and back to strike the floor.
In his extensive and well written reasons for judgment, the trial judge set forth his findings of fact, which we adopt as our own, and from which we take the liberty of quoting, as follows:
"Plaintiff testified that at the time of the accident he was 46 years of age and had worked in the electric motor repair shop since 1974. Before that he had been in the Air Force for 21 years and had retired. On the day after the accident, he went to the hospital at England Air Force Base in Alexandria seeking medical attention, but they refused because it was not a service related accident. He says he tried to get authorization from the Piggly Wiggly store to see their doctor, but they also refused since they had no report of the accident at the time.
"On December 18, 1981, plaintiff was seen by Dr. Grover C. Bahm, Jr., a physician in Pineville, LA. This physician found stiffness and pain in plaintiff's lower back and slight tenderness of the paravertebra muscles at the level L5-S1, but no tenderness over the joint itself. X-rays of the lumbar spine including hip joints revealed no evidence of fracture or dislocation. The joint spaces were well preserved. Dr. Bahm's diagnosis was acute lumbo-sacral strain. He treated plaintiff for a time, and then referred him to Dr. Vanda L. Davidson, an orthopedic surgeon in Alexandria.
"Dr. Davidson first saw plaintiff on January 20, 1982. Plaintiff gave a history of having sustained a fracture to his left leg in an automobile accident when he was about sixteen years old. Dr. Davidson found that as a result of this old fracture the left leg was about ¾ inch shorter than the right, and that plaintiff stood with a tilt of his body to the left. He also found that plaintiff had spasm of the muscles on both sides of the low back and tenderness in the left sacroiliac muscle group. The neurological exam was normal. Plaintiff stated that he had pain in his shoulder and neck region immediately after the accident, but the doctor found that these complaints were minimal at the time of his examination. X-rays of the lower back were initially evaluated as normal, but, as will be seen, later x-rays showed degenerative *237 arthritic changes had already commenced in the low spine. No atrophy of the calfs or thighs was found. Dr. Davidson's initial diagnosis was that plaintiff had strained his back in the fall in the grocery store. He prescribed a muscle relaxer and antiinflammatory drugs and requested plaintiff to return in about two weeks.
"Dr. Davidson continued to see plaintiff at about two week intervals. On March 1, 1982, he admitted plaintiff to the hospital for a myelogram and a bone scan, both of which were negative of any evidence of a disc injury.
"On March 13, 1982, Dr. Davidson found plaintiff continued to have slow movement, but that he still had some tenderness and muscle spasm. Plaintiff was anxious to return to work because of financial difficulties, so the doctor approved return to work with the restriction that plaintiff avoid lifting over 25 pounds.
"The record shows that plaintiff actually did return to his work of repairing electric motors on May 23, 1982, and that he has worked regularly at this same job up to the date of the trial. However, plaintiff has not been able to do any heavy lifting and has restricted his work to small electric motors.
"Plaintiff continued to see Dr. Davidson after he went to work. The doctor testified that the plaintiff did fairly well at first, but that in July, 1982, he developed pain in the right posterior iliac spine, which was different from the pain previously experienced on the left side. In September, 1982, plaintiff was still having pain on both the left and right sides in his low back.
"As the court understands Dr. Davidson's testimony, plaintiff stopped seeing him in September 1982, and did not return until September 26, 1983. On this last occasion plaintiff was complaining of pain in his low back, particularly after standing for any length of time at work. Pain also occurred if plaintiff tried to bend over and pick up anything. He was having a lot of trouble continuing work. The doctor found that on standing, the patient had a list to the right side rather than to the left and that he had spasm of the muscles on the left side and tenderness over the L-5, S-1 area. X-rays showed degenerative arthritis of the low back. The doctor's diagnosis in September 1983 was degenerative arthritis of the low back, probably secondary to the shortening of the left leg, and that this condition was probably aggravated by the fall in the grocery store in December, 1981. He also stated plaintiff `could possibly' have a ruptured disc on the left side, but if so it had never caused any `hard neurological findings.' Dr. Davidson's prognosis was that the degenerative process would probably continue to worsen, but that some relief could be given by bracing and anti-inflammatory drugs, and that plaintiff may be able to finish out his normal work career but at less rigorous employment. The doctor stated at one point that in five or six years plaintiff would probably have developed the same degenerative arthritic condition, but that the fall brought it on sooner. Dr. Davidson recommended that plaintiff continue the work he was doing but that he avoid any heavy lifting.
"On the request of the defendant, plaintiff was examined on March 24, 1983 by Dr. Ray Buerlot, Jr., an orthepedic [sic] surgeon of Alexandria. This physician found range of motion normal, tests for nerve root irritation negative, no atrophy, x-rays showed early mild degenerative arthritic changes at L-4, L-5 and S-1. He reviewed the previous negative myelogram. Dr. Buerlot's diagnosis was `chronic back syndrome.' He expressed the opinion that plaintiff could perform his present light work, and recommended flexion exercises to strengthen the back muscles.
"Plaintiff and several other lay witnesses testified as to his physical condition before and after the accident. Plaintiff stated that before the accident in December of 1981, he worked regularly repairing electric motors with no difficulty *238 in standing for long periods of time and lifting heavy objects. He also was very active in his church's building program, built a fishing camp for himself, worked in his yard, and was generally physically active. Since the accident he has had to restrict his physical activity substantially.
"Plaintiff's testimony as to his physical condition before and after the accident is corroborated by that of his pastor, Rev. Van Westberry, a former pastor, Rev. Ora C. Thompson, his wife, Mrs. Dolly Tate, and his sister-in-law, Mrs. Minnie Cross. Also, Mr. Bobbie Davis, a fellow employee at the electric motor shop, testified he had worked with plaintiff for six years and that before the accident he worked without difficulty but since the accident he could not lift heavy motors or stand for long periods of time.
"Defendant introduced the testimony of Mr. Lyndel Hagen, owner and manager of the electric motor shop, who testified that when plaintiff stopped working on December 16, 1981 he was earning $5.50 an hour, and that when he returned to work on May 17, 1982, he earned the same wage until about November 1982 when his wage was increased to $6.00 per hour. Mr. Hagen testified plaintiff performed his work satisfactorily, but that he was restricted from heavy lifting.
"Defendant also introduced testimony of Mr. Danny Hagen, the shop supervisor, who testified that plaintiff's work was satisfactory and that he worked every day, and also some overtime on Saturdays. Danny Hagen also testified that plaintiff's work was restricted from heavy lifting, and that other employees had to help him with heavy motors." (Trial Transcript pages 23-27.)
The trial judge in his written reasons for judgment setting forth the award for general damages stated that:
"The present plaintiff was symptom-free before the accident. The injury aggravated a pre-existing arthritic condition of the low spine, but for which plaintiff's back sprain might have cleared up in a matter of a few months. However, the aggravation of the pre-existing condition has caused substantial pain and disability. The symptoms are not such that plaintiff is disabled completely from his work, and both of his physicians have recommended that he continue to work. However, there is no question that his life has been substantially changed by the injuries which he received. The Court is of the opinion that an award of $40,000.00 for general damages is appropriate under all of the circumstances." (Trial Transcript page 30.)
This issue of the correctness of an award for damages was recently before this court in Leblanc v. Montgomery Ward & Co., Inc., 420 So.2d 1320 (La.App. 3rd Cir.1982), wherein we held:
"`The standard of appellate review vis-a-vis damage awards was set forth in Reck v. Stevens, 373 So.2d 498 (La.1979) as follows:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
"With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La. C.Civ.P. [sic] art. 1934(3) [now La.C.C. Art. 1999], we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the basis of prior awards) the trier of fact's award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):"
"`The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court.... *239 The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award.'
"`Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much" * * * discretion,' La.Civ. C. art. 1934(3) [now La.C.C. Art. 1999] in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La. 1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
"`In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function-if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see Coco v. Winston Industries, Inc. at 341 So.2d [332] 334 (La.1977).'" (Footnote omitted.) LeBlanc v. Montgomery Ward & Co., Inc., supra, at pages 1321-1322.
See also, Gibson v. Winn Dixie Louisiana, Inc., 426 So.2d 731 (La.1983).
Thus, in reviewing the trial judge's award of damages in this case one cannot simply resort to seemingly similar cases for the reason that the damages in each particular case must be determined on the basis of facts and circumstances peculiar to that particular case. Our review of the record does not indicate that the trial judge abused his "much discretion" in the damage award made in this case. LSA-C.C. Art. 1999.
The trial judge made no award for future lost wages to the plaintiff finding that the evidence did not prove that there would be any loss of future wages. The evidence shows that plaintiff is now working, with a restriction against heavy lifting, at the same place of employment and making a greater hourly wage than before the accident. Our jurisprudence mandates that an appellate court should not alter a trial court's finding of fact in the absence of manifest or clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Our review of the record in this case reveals not only a reasonable factual basis for the trial court's conclusion that plaintiff would not suffer any future loss of wages but that there is no clear error in such finding.
For the reasons assigned, the judgment is affirmed at defendants-appellants' costs.
AFFIRMED.