STOKER, Judge.
Warren Bennett sued Gerald Bardwell, Bardwell’s insurer, and the State of Louisiana, through the Department of Transportation and Development (DOTD), to recover damages resulting from a vehicular collision between Bennett and Bardwell. Bard-well and his insurer were released on a partial judgment of dismissal. After trial the judge found that the State was fully responsible, resting “upon either negligence (La.C.C. Art. 2315) or strict liability (La.C.C. Art. 2317).” Bennett was awarded damages totaling $43,369.40, with interest and costs. The judge granted Bennett’s application for a new trial on the issue of quantum, increased general damages from $25,000 to $50,000, and raised the award for loss of earnings from $15,-000 to $25,000.
The State appeals on the issues of its liability and the quantum. Bennett answers requesting a further increase in his award.
FACTS
The collision occurred on the Murray Street Bridge, which connected Alexandria and Pineville. The bridge was owned and maintained by the DOTD. On September 9, 1981 Bennett was driving his van toward Pineville, while Bardwell was proceeding toward Alexandria driving a pickup truck pulling a single axle four-wheel trailer. The bridge was 18 feet from curb to curb, and Bardwell’s trailer was 8 feet at its widest point. As the vehicles approached each other, each driver pulled to his right. The sections of the steel grill roadway were uneven, and a piece of the metal curbing projected into Bardwell’s lane. The trailer wheel on the passenger side hit the curb and the trailer was propelled over the centerline into Bennett’s van. A gouge in the trailer tire and a shred of rubber on the curb that fit the gouge confirmed this account of the accident.
No one took accurate measurements of the protrusion of the curb. Estimates at trial showed it to be somewhere between 1½ inches and 4 inches. There is no doubt that the bridge was in poor condition. In fact, it had been designated for replacement. However, the DOTD had been enjoined from replacing it by a citizens group which wanted to preserve it as a landmark. The bridge was inspected every six months, and the reports around the time of the accident show that there were cracks in the piers, causing shifting of the bridge, and corrosion of the steel, among other deficiencies. Cecil Roy Danzy, who had inspected the bridge for the DOTD, knew of the protrusion of this curb but had not made a notation on it in his report because “it wasn’t bad enough.”
LIABILITY
The trial court imposed liability upon the DOTD based “upon either negligence (La.C.C. Art. 2315) or strict liability (La.C.C. Art. 2317).” As explained in Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the only difference between the two theories is that in a strict liability case, based on LSA-C.C. Art. 2317, the claimant is relieved of proving that the owner knew or should have known of the unreasonable risk of injury created by the thing he owns. The inspectors of the Murray Street Bridge were aware of the condition of the bridge. In light of that knowledge, there is no need to hold the State strictly liable. Liability based on negligence is imposed when the DOTD is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. *352 Robinson v. State Through Dept. of Transp., 454 So.2d 257 (La.App. 1st Cir. 1984), writ denied, 458 So.2d 122 (La.1984). This liability stems from its duty under LSA-R.S. 48:21 to “improve, maintain, repair, and regulate the use of public transportation systems and to perform such other functions with regard to public highways, roads, and other transportation related facilities as may be conferred on the department by applicable law.” LSA-R.S. 48:1 includes bridges in its definition of “highway.”
To show negligence on the part of DOTD, Bennett also had to prove that the condition of the bridge created an unreasonable risk of injury that resulted in damage, and that the DOTD failed to render the bridge safe or to take measures to prevent the damage. Kent, supra.
The trial judge stated in his reasons for judgment:
“Both vehicles were within the posted weight and size limits of vehicles allowed to cross the bridge. There were no signs warning of the protrusion. Motorists crossing the narrow bridge would not ordinarily see the protrusion because their attention would necessarily be focused on approaching traffic.
“The Court is of the opinion that the two or three inch protrusion in the metal curbing, when combined with the bridge’s deteriorating condition, its narrowness, and the lack of any warning of the protrusion, presented an unreasonable risk of harm to motorists. This defective condition was the cause of the accident. The State, as owner and custodian of the bridge, is liable for the resulting damages.”
We agree with his conclusions.
The DOTD argues that Bardwell’s maneuvering to the right when he was within his lane of traffic caused the accident. On such a narrow bridge, Bardwell’s action would be perfectly natural. The plaintiff testified that he also pulled toward the right as he approached the pickup truck. In fact, numerous marks and gouges on the curb showed that many vehicles had taken the same action and had hit the curb. If the obstruction had not snagged the tire, the trailer might have brushed the curb, but we doubt that it would have been thrown into the opposite lane. We find no negligence in Bardwell’s efforts to compensate for the narrowness of his lane.
The DOTD concedes that it took no steps to repair the bridge. In its brief it argues that the fact that it was “at least making every effort to replace” the structure should militate against a finding that it breached its duty. Though the DOTD was enjoined from replacing the bridge, it was still responsible for ensuring that the roadway was in safe condition for the traveling public. The projection of the curb created a hazard to drivers on the bridge. It was so small that it would not necessarily catch the attention of drivers concentrating on other conditions on the bridge, yet its seriousness was magnified by the fact that the extremely narrow lane extended all the way to the curb. The failure to recognize and remedy this hazard was a breach of the DOTD’s duty to provide a safe roadway. We therefore affirm the trial court’s judgment holding the DOTD 100% liable for the collision.
QUANTUM
The trial judge awarded damages to Bennett as follows:
General damages $25,000.00
Past and future loss of earnings 15,000.00
Past medical expenses 1,721.00
Future medical expenses 500.00
Damages to vehicle 1,148.40
$43,369.40
In response to Bennett’s application for a new trial, the general damages were increased to $50,000, and the award for loss of earnings was raised to $25,000.
DOTD argues that the increases were improper, as Bennett’s business has increased since the accident. Bennett claims that the award was grossly inadequate m light of the evidence.
*353 Bennett owns a ceramic tile and marble contracting firm, and is engaged in a great deal of physical labor in conjunction with that business. He was 44 years old at the time of the accident. The impact threw him out of his seat and twisted him around, causing a back injury. Dr. R.K. Tischler, a general surgeon who saw him the day of the accident, diagnosed an acute cervical strain. His therapy consisted of rest, heat and the use of muscle relaxants. After several weeks, Bennett was referred to Dr. C.W. Lowrey, an orthopedic surgeon, because of persistent lower back pain. Dr. Lowrey found that Bennett had prior degenerative arthritis, a condition that existed before the accident, but was probably aggravated by the incident. Medication apparently led to an improvement of Bennett’s condition. Dr. Lowrey prescribed physical therapy sessions which Bennett could not schedule because his work kept him out of town. By August 5, 1982, the last time Dr. Lowrey saw Bennett, the doctor found his condition to be essentially normal. Bennett was advised to engage in a less vigorous work schedule. His arthritis may worsen over the years. Now he suffers occasional “flare-ups” of back pain, usually when he overexerts himself while working.
Considerable discomfort was caused by Bennett’s back problems, though he testified that he has “a high tolerance to pain.” He can no longer perform the manual labor he formerly handled at work. However, he can still fulfill his management and training functions. He is prevented from engaging in some of the physical activities he enjoyed, including scuba diving and snow skiing.
The trial judge awarded Bennett $50,000 in general damages. Bennett argues that this sum is grossly inadequate. We can only alter the award if we find an abuse of the trial court’s discretion. Tate v. Trinity Universal Ins. Co., 465 So.2d 235 (La.App. 3d Cir.1985). We find no abuse with respect to this award and therefore affirm it.
Counsel for Bennett in brief and oral argument strenuously argues that the trial court grossly erred in its award for loss of income and earning capacity. Counsel ingeniously analyzes the adjustments Bennett was required to make in hiring extra labor and concludes that Bennett’s economic loss was $529,011.76. Counsel candidly recognizes the difficulty of his burden of persuasion because the evidence shows Bennett’s post-injury gross earnings were higher than his pre-accident income. In this regard Bennett relies heavily on the pronouncement in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) which emphasizes the distinction between loss of earning capacity and ability on the one hand and loss of income on the other hand.
The trial court in this case did make an award of $25,000 for loss of past and future earnings. In fact, that award was a result of reconsideration by the judge of his original $15,000 award. Aside from problems stemming from the rule announced in Coco itself concerning the disturbance of the trial court awards at the appellate level, we do not find the situation presented in Coco to be parallel or similar to those of plaintiff Bennett in this case. The plaintiff in Coco was a general laborer. Here the plaintiff is the owner of an established business. He not only has contributed through work with his own hands but contributes in management and direction of employees of the business. Plaintiff’s skill, learned in a family business, is now imparted through the training of employees and helpers as well as the over-all management of the business, preparing bids, purchasing supplies and generally selling his services and maintaining the goodwill of his business.
Against this background and the fact that the business has grossed more since plaintiff's accident, it is most difficult to make an assessment of a large award for loss in earning capacity or ability in the Coco sense. Moreover, we are not impressed with any claim that Bennett is excessively impaired, as it appears that he continues to work and merely avoids heavy lifting. His managerial and training abilities are not affected. Under the circum *354 stances we decline to disturb the trial court’s award for economic loss.
Bennett argues that the award of $500 for future medical expenses is inadequate in light of Dr. Tischler’s testimony that he should be examined every three to six months, at a cost of $25 per visit. The trial judge agreed that Bennett would have some future medical expenses. However, he evidently discounted the doctor’s testimony. Bennett experiences flare-ups of back pain, due predominantly to overexertion. His arthritis may worsen over the years. Bennett demonstrated a determination not to let his injury interfere with his lifestyle when he failed to schedule the therapy sessions because they conflicted with his work. We find that the trial court’s award of $500 for future medical expenses was justified by the evidence, and we affirm.
CONCLUSION
We affirm the trial court’s assessment of the liability of the DOTD. We also affirm the award to Warren Bennett of $78,369.40, plus costs and interest from date of judicial demand. The costs of this appeal are assessed equally to Warren Bennett and the DOTD.
AFFIRMED.