## In re AIR CRASH DISASTER NEAR NEW ORLEANS, LOUISIANA ON JULY 9, 1982.

**Robert GIANCONTIERI, Plaintiff-Appellee Cross-Appellant,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., et al., Defendants-Appellants Cross-Appellees.**

No. 84–3314.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1985.

Rehearing and Rehearing En Banc Denied Sept. 30, 1985.

Tate, Circuit Judge, filed dissenting opinion.

Francis G. Weller, Robert E. Kerrigan, Jr., Darrell K. Cherry, New Orleans, La., for Pan American World Airways, Inc.

William C. Credo, III, Metairie, La., for Giancontieri.

Before WISDOM, TATE and DAVIS, Circuit Judges.

## W. EUGENE DAVIS, Circuit Judge:

This is one of more than three hundred lawsuits stemming from the July 9, 1982 crash of Pan American World Airways flight 759 in Kenner, Louisiana. The plane's fuselage completely destroyed the home of Robert Giancontieri, killing his wife, Sandra, twenty-six, and his three children, Robert, six, Ryan, four, and Christopher, three months. In Mr. Giancontieri's wrongful death action, the jury awarded the following damages:

| | |
|---|---|
| 1) Loss of love, affection and companionship of Sandra | $1,500,000 |
| 2) Loss of love, affection and companionship of son Robert | $ 400,000 |
| 3) Loss of love, affection and companionship of son Ryan | $ 400,000 |
| 4) Loss of love, affection and companionship of son Christopher | $ 400,000 |
| 5) Survival action for pre-death pain and suffering of Sandra | $ 100,000 |
| 6) Mental anguish over loss of home and contents | $ 50,000[1] |

■ Although a claim for the conscious pain and suffering prior to death of the three children was made, the jury awarded no damages for this item. After a hearing on Pan Am's request for a new trial, the district court granted the motion unless Giancontieri agreed to remit to $1,000,000 the $1.5 million award for the loss of his wife's love and affection, remit to $15,000 the $100,000 award for her pain and suffer-

**1.** The jury also made the following awards:

| | |
|---|---|
| 1) Damage to home (in addition to proceeds of homeowner's policy) | $ 15,000.00 |
| 2) Loss of contents of home (in addition to proceeds of homeowner's policy) | $ 30,000.00 |
| 3) Loss of Sandra's services | $200,000.00 |
| 4) Past medical expenses | $ 1,500.00 |
| 5) Funeral expenses | $ 16,438.48 |

Most of these awards are protested in some fashion by one or both of the parties to this

ing and remit to $15,000 the $50,000 award for his own mental anguish over the loss of his house and its contents. Giancontieri agreed to the remittitur, and this appeal followed. Both parties assert numerous grounds for adjusting the damage awards upward or downward.[2]

## I.

Before considering the parties' challenges to the damage awards, several evidentiary issues must be disposed of. Pan Am cites three of the district court's evidentiary rulings as requiring reversal: 1) the admission of photographs of the bodies of the decedents; 2) the refusal to admit evidence that Giancontieri had contracted venereal disease during his marriage; and 3) the refusal to admit evidence of Giancontieri's remarriage until the end of trial, when Giancontieri himself testified.

Admission or exclusion of evidence during the course of the trial is the responsibility of the district judge, and, absent some abuse of discretion, his decisions will not be disturbed on appeal. *E.g., Big John, B.V. v. Indian Head Grain Company*, 718 F.2d 143, 146 (5th Cir.1983). Although "[a]ll relevant evidence is admissible," Fed.R. Evid. 402, the district judge has the discretion to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

■ Pan Am argues that admission of the photographs of the bodies of Gianconti-

appeal. Since these present less troublesome legal issues than the awards for loss of the family, we merely note their presence here and reserve discussion of them until parts III and IV of this opinion.

**2.** Giancontieri requests that we reverse the remittitur, but it is settled that a plaintiff may not appeal a remitted award after accepting it. *See Donovan v. Penn Shipping Company, Inc.*, 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977); *Higgins v. Smith International, Inc.*, 716 F.2d 278, 282 (5th Cir.1983).

eri's family, three of them charred by fire, served no purpose other than to gain the jury's sympathy. Giancontieri counters that the photographs demonstrated that three of the decedents died of third degree burns and thus endured conscious pain and suffering prior to their deaths, and also corroborated the testimony of the two witnesses who described finding the bodies. While the testimony of the witnesses describing the discovery and condition of the bodies was not contradicted, and therefore there was little need to introduce the photographs in corroboration, we nonetheless conclude that their admission was not an abuse of discretion requiring reversal. Although unsettling, these photographs were not so gruesome that their prejudicial potential absolutely required their exclusion.

■ Likewise, we find no abuse of discretion in the district court's refusal to admit evidence of Giancontieri's contracting venereal disease. Giancontieri admitted on the stand that he had once been unfaithful to his wife; admission of the evidence of venereal disease would have proved nothing more. The decision that the prejudicial potential of this evidence outweighed its value was well within the district court's discretion.

Giancontieri's attorney obtained an in limine ruling prohibiting reference to Giancontieri's remarriage after the death of his family. After the testimony of the first witness, defendants' counsel informed the judge of his belief that Giancontieri's counsel was depicting Giancontieri as a completely broken man, unable to function in society, thus "opening the door" to evidence of the remarriage. Although the district judge substantially concurred in Pan Am's assessment of counsel for plaintiff's strategy, he nonetheless continued to exclude any inquiry into the subject of the remarriage until Giancontieri himself took the stand as the final witness. In the meantime, various of Giancontieri's relatives, acquaintances, and friends testified concerning his problems with readjustment. Many of their statements indicated that Giancontieri's mental condition showed no signs of improvement and that he was unable to maintain normal relationships. Pan Am contends that the tardy decision to admit evidence of Giancontieri's remarriage could not counter the effect of this misleading testimony.

■ Giancontieri argues that, based on the Louisiana jurisprudence we are bound to follow, evidence of the remarriage should not have been admitted at all.[3] The Louisiana decisions forbidding introduction of evidence of remarriage of the surviving spouse are primarily concerned that a defendant might use this evidence to attempt to mitigate the emotional damages occasioned by the loss of the spouse, which are considered to be fixed at the time of the loss. In this case, when the district court decided to admit evidence of plaintiff's remarriage it immediately cautioned the jury that this evidence was not to be used in any fashion to mitigate damages. This instruction was repeated in the final charge to the jury. In *Caldarera v. Eastern Air Lines*, we noted that the district court's decision to exclude evidence of a remarriage "is not subject to scrutiny by an appellate Bureau of Weights and Standards that balances the factors gram for gram," 705 F.2d at 782. The same holds true when evidence of the remarriage is admitted. The district court watching the drama of the trial unfold was in a much better position than are we to evaluate whether and at what point Pan Am should have been permitted to disclose this evidence to rebut plaintiff's evidence of his inability to function emotionally and to form and maintain relationships with others. We find no abuse of discretion in the district court's cautious handling of this delicate subject matter.

## II. Propriety of the Damage Awards for Loss of Love and Affection

Pan Am contends that the damage awards for loss of love, affection and com-

---

3. *See Caldarera v. Eastern Air Lines, Inc.,* 705 F.2d 778, 782 (5th Cir.1983); *McFarland v. Illinois Central Railroad Co.,* 241 La. 15, 127 So.2d 183, 186 (1961); *Lofton v. Cade,* 359 So.2d 1074, 1075 (La.App. 3d Cir.), *writ denied,* 360 So.2d 1177 (La.1978).

panionship for Giancontieri's wife and children are, even as remitted, excessive as a matter of law.

■ In evaluating the propriety of these awards, we start from the bedrock principle that the determination of the extent of damages is for the trier of fact, and in this area the appellate court should step lightly or not at all. Judge Rubin's precis of the law for this court in *Caldarera v. Eastern Air Lines* can hardly be improved upon:

Because the assessment of damages for grief and emotional distress is so dependent on the facts and is so largely a matter of judgment, we are chary of substituting our views for those of the trial judge. He has seen the parties and heard the evidence; we have only read papers.

The jury's assessment of damages is even more weighted against appellate reconsideration, especially when, as in the case of the award to Peter Caldarera, the trial judge has approved it. We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount that any reason-

able man could feel the claimant is entitled to."

705 F.2d at 783–84 (footnotes and citations omitted)

Pan Am also contends that in this diversity case, *Erie Railroad Co. v. Tompkins* dictates that we may not affirm an award higher than that which would be allowed by the highest court of the state whose law we are applying. There is some apparent conflict in the cases concerning whether the excessiveness of a verdict is a matter governed by state or federal law,[4] but it is not necessary that we attempt here to resolve whatever conflict there may be. The Louisiana standard for determining whether a verdict is excessive is set forth in *Reck v. Stevens*, 373 So.2d 498 (La.1979):

Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determines that the award is excessive.... Thus, the initial inquiry must always be directed at whether the prior court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of facts 'much discretion,' ... in the award of damages.... In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function.... The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly

4. A number of cases stand for the proposition Pan Am urges—that the highest award which could be affirmed by a state court forms a substantive limit on what the federal court may allow. *See e.g., Hysell v. Iowa Public Service Co.,* 559 F.2d 468, 472 (8th Cir.1977); *Ouachita National Bank v. Tosco Corp.,* 686 F.2d 1291, 1297 (8th Cir.1982), *rev'd on other grounds,* 716 F.2d 485 (8th Cir.1983) (en banc); *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2d Cir.1984). It is generally accepted, however, that the question whether a new trial should be granted, including a new trial on the basis of excessive damages, is a purely procedural one, governed by federal law. *See e.g. Westbrook v.*

*General Tire and Rubber Co.,* 754 F.2d 1233, 1238 (5th Cir.1985); 11 Wright & Miller, *Federal Practice and Procedure* § 2802, at 29–31. It is apparent that these lines of cases hold at least the potential for conflict. *See also Lowe v. General Motors Corp.,* 624 F.2d 1373, 1383 (5th Cir.1980) ("while the state standard ... would apply to the substantive issue whether the verdict in this case was excessive, a Federal standard applies to determine the slightly different procedural question of whether a Federal District Court, sitting in diversity, should automatically grant a new trial on the basis of excessive damages.")

disproportionate to past awards ... for (truly) 'similar' injuries....

373 So.2d at 501 (emphasis in original).

In practical application this standard is no more precise than the federal standards set forth in *Caldarera;* under both the decision whether an award must be reduced is one which "cannot be supported entirely by rational analysis. It is inherently subjective in large part, involving the interplay of experience and emotions as well as calculation." *Caldarera,* 705 F.2d at 784. And of course, under both the state and the federal standards, the touchstone must be the facts in the record of the individual case. *Caldarera,* 705 F.2d at 785; *Reck v. Stevens,* 373 So.2d at 501. We therefore do not find it necessary to either accept or reject Pan Am's contention that the Louisiana standard should apply. *See Abernathy v. Superior Hardwoods, Inc.,* 704 F.2d 963, 971 (7th Cir.1983).

Under either standard we have no doubt that the awards for loss of love and affection in this case are excessive and constitute an abuse of the trier of fact's discretion. As *Caldarera* stated:

> The loss of a loved one is not measurable in money. Human life is, indeed priceless. Yet the very purpose of the lawsuit for wrongful death is to fix damages in money for what cannot be measured in money's worth. Unless we are to accept any verdict, in whatever amount, as a legally acceptable measure, we must review the amount a jury or a trial court awards.... The sky is simply not the limit for jury verdicts, even those that have been once reviewed.

705 F.2d at 784.

Much more difficult is determining the amount which the jury could permissibly have awarded. For what rough guidance they provide, we examine past awards for similar injuries. *See Haley v. Pan American World Airways, Inc.,* 746 F.2d 311, 318–19 (5th Cir.1984). Of course, simply because certain awards have been *affirmed* does not indicate that these are the highest, or even near the highest, awards which might be allowed.

The highest reported Louisiana state court award for the loss of love and companionship of a spouse is the $200,000 awarded in *Cheatham v. City of New Orleans,* 378 So.2d 369 (La.1980). In *Cheatham,* the court of appeals reduced the original jury verdict of $200,000 to $50,000. The Louisiana Supreme Court reversed and reinstated the original verdict, stating that "although the awards may have been high they were within a discretionary range such that we cannot say that the jury erred." 378 So.2d at 378. A number of awards for loss of the love and affection of a spouse ranging from $100,000 to $150,000 have also been affirmed.[5]

The highest reported Louisiana state court award for the loss of the love and affection of a child appears to be $150,000, an amount which has been approved in at least two cases.[6] Several other cases have approved awards of $100,000 or more.[7]

In addition, three recent cases decided by this circuit have involved the issue of quantum of damages for emotional loss resulting from the death of a loved one under Louisiana law. In *Caldarera v. Eastern Air Lines,* plaintiff lost his wife, mother, and eight-year old son in a plane crash. The district judge assessed damages

---

**5.** *See Pitre v. Aetna Life and Casualty Co.,* 434 So.2d 191 (La.App. 3d Cir.1983), *rev'd on other grounds,* 456 So.2d 626 (La.1984); *Duvernay v. Dept. of Public Safety,* 433 So.2d 254 (La.App. 1st Cir.), *writ denied,* 440 So.2d 150 (La.1983); *Bialy v. State Department of Transportation and Development,* 414 So.2d 1273 (La.App. 3d Cir.), *writ denied,* 417 So.2d 367 (La.1982); *Hardy v. Department of Highways,* 404 So.2d 981 (La. App. 3d Cir.), *writ denied,* 407 So.2d 741 (La. 1981).

**6.** *See Lang v. Prince,* 447 So.2d 1112 (La.App. 1st Cir.1984), *writ denied,* 450 So.2d 1309 (La.1984); *Williams v. City of New Orleans,* 433 So.2d 1129 (La.App. 4th Cir.1983).

**7.** *Johnson v. Folse,* 438 So.2d 1137 (La.App. 1st Cir.1983); *Pawlak v. Brown,* 430 So.2d 1346 (La.App. 3d Cir.), *writ denied,* 439 So.2d 1072 (La.1983); *Bullard v. Department of Transportation and Development,* 413 So.2d 606 (La.App. 1st Cir.1982).

against the United States in the amount of $797,021, of which $400,000 was for loss of love and companionship of his wife, $100,000 was for loss of love and companionship of his mother, and $150,000 for loss of love and companionship for his son. The panel determined that the maximum which could be awarded for the loss of love and affection of the wife was $250,000, and the maximum which could be awarded for the loss of love and affection of the son was $225,000.[8]

In *Haley v. Pan American World Airways*, 746 F.2d 311 (5th Cir.1984) the parents of a twenty-five-year-old man killed in the crash of Flight 759 were awarded $350,000 each for the loss of love and companionship of their son. The panel concluded that in the specific circumstances of that case, the maximum amount which could be awarded to each parent was $200,000. 746 F.2d at 318–19.

Finally, in *Winbourne v. Eastern Air Lines, Inc.*, 758 F.2d 1016 (5th Cir.1984), the plaintiff lost his wife and two daughters—his entire family. The district judge allocated damages of $500,000 for the loss of love and affection of the wife. A panel of this court affirmed, noting that the plaintiff had lost his entire family, and remained "lost and disturbed."

■ We find that $500,000 for the loss of love and affection of the wife and $250,000 for the loss of love and affection of each child are the maximum amounts which may be awarded in this case. We reach this conclusion first and foremost on the evidence in this record, and secondarily on the rough guidance provided by awards approved for similar injuries by the Louisiana appellate courts and the decisions of this court applying Louisiana law. We do not, of course, intimate that the award we approve in this case is the highest which

might be awarded in any case, nor that an award in this amount could not be approved on facts which differ in some respects from those in this case. We hold only that on the facts of *this* case, these are the maximum awards which may be sustained.

## III. Other Damage Items

### A. Survival Action for Pain and Suffering

■ Pan Am argues that the award for damages for Sandra Giancontieri's conscious pain and suffering prior to death must be reversed, because there is no evidence in the record from which the jury could properly conclude that she was conscious between the impact and her demise. Giancontieri counters that the individual who discovered Mrs. Giancontieri's body testified that it was in a crawling position, a statement which was corroborated by the photographs of the body. In addition, Giancontieri relies on a pathologist's testimony that Mrs. Giancontieri died of 100% third degree burns, and that the process of death from this cause is not instantaneous, but takes from five to thirty seconds.

There was in fact no evidence that Mrs. Giancontieri was conscious after the impact of the plane with the ground. Because the house was destroyed around Mrs. Giancontieri, it is impossible to attribute any significance to the fact that her body was found in a position which could be characterized as a "crawling-type" position. The pathologist testified that he could not state whether any of the decedents were conscious after the impact. There is simply no direct or circumstantial evidence from which it could be inferred that Mrs. Giancontieri felt anything between the impact of the plane and her death.[9] This award must therefore be reversed.

---

8. It was necessary to determine the maximum amount which could be awarded for the loss of the son, because this circuit's "maximum recovery" rule which dictates that a verdict be reduced only to the maximum amount the jury could properly have awarded. *Caldarera*, 705 F.2d at 784.

9. This holding is not in conflict with *Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245 (5th Cir.1985). The decedent in *Pregeant* was a flight attendant on Flight 759. There was testimony in that case that:

[E]veryone aboard would have lost consciousness within two-to-three seconds following

## B. Damages for Mental Anguish from Loss of Property

In seeking reversal of the $15,000 award for Giancontieri's mental anguish from loss of property, Pan Am makes the dual argument that Giancontieri did not even testify that he felt any anguish over the loss of the house and contents, and that Louisiana law does not allow an individual who was not present to witness the destruction of his property to recover this item of damages. Giancontieri argues that he was on the scene immediately following the crash and that although his house was leveled, he saw its flaming rubble.

■ As Pan Am argues, Louisiana law generally does require that an individual be present to see the destruction of his property before he can recover for anguish caused by that destruction. *E.g., Dugas v. St. Martin Parish Police Jury*, 351 So.2d 271, 276 (La.App. 3d Cir.1977), *writ denied*, 353 So.2d 1046 (La.1978).[10] The basis for this rule appears to be that absent his presence at the scene, a plaintiff usually cannot make the strong showing of causal nexus between the destruction of the property and the mental anguish necessary to prove such a claim. *See Elston v. Valley Electric Membership Corp.*, 381 So.2d 554, 556 (La.App. 2d Cir.1980).

In this case Giancontieri testified that he arrived on the scene in time to see the remnants of his house after its destruction. The psychiatrists called by the plaintiff testified that his mental problems were "reactive and related to the incident which led to the loss of his wife and family and *his property*" and "due to the death of his wife, three children and the loss of his household and *his personal property*." Giancontieri himself did not testify concerning his feelings about the loss of his home.

■ Like *Turgeau v. Pan American World Airways*, 764 F.2d 1084 (5th Cir. 1985), this case presents us with a situation in which expert testimony briefly and without explanation identifies a loss of property as one of the causes of a psychological injury. In both cases the major cause of the injury is clearly something else—in *Turgeau*, concern over family members; here, the actual loss of family members. In neither case is the jury given any basis whatever on which to evaluate the extent of the injury actually attributable to loss of property. As in *Turgeau*, we conclude that to allow recovery for mental anguish damages resulting from damage to property would be inconsistent with the strong showing of causal nexus between damage and injury required by Louisiana law. This award must therefore be reversed.

## C. Loss of Services

Giancontieri was awarded $200,000 for loss of the services of his wife. Pan Am argues that the only evidence which supported this award was the testimony of various relatives that Mrs. Giancontieri was a good mother who kept a neat house and cooked for Mr. Giancontieri. Because there was no testimony concerning the amount of time Mrs. Giancontieri spent actually cooking and performing services for Mr. Giancontieri, Pan Am argues that any award for loss of services is completely

impact. The impact period ... was at least two-to-three seconds plus the time it took for the aircraft to travel approximately 400 feet during its disintegration ... [The decedent's] body was severely burned and was found in the braced position flight attendants are trained to assume prior to a crash. The impact and disintegration of the aircraft extended over several seconds before the aircraft and its human contents came to rest.
762 F.2d at 1250.
There was no like testimony, from which an inference of continued consciousness could be drawn, in this case.

10. Louisiana law also allows recovery for mental anguish caused by property damage under three other circumstances: (1) when the damage is caused by an intentional or illegal act; (2) when the damage is caused by acts constituting a continuing nuisance; or (3) when the damage is caused by acts for which the tortfeasor will be strictly or absolutely liable. *E.g., id.; Meshell v. Insurance Co. of North America*, 416 So.2d 1383, 1387 (La.App. 3d Cir.1982).

unsupported by the record. Pan Am contends that the testimony of Giancontieri's economist was completely abstract—referring solely to the cost of hiring a housekeeper from a particular agency for eight hours a day, five days a week, for forty-three years. Giancontieri counters that the economist's "unrebutted" testimony revealed that the loss of services figure should be much higher.

We decline to disturb this damage award. Pan Am's argument fails because it is clear from the trial testimony that Mrs. Giancontieri did cook and maintain a home for her husband and children. Giancontieri's argument fails as well, because the economist's testimony does not appear to have been grounded in any knowledge of the particular facts of the Giancontieri's relationship or of the role that Mrs. Giancontieri took in the household. The testimony concerning Mrs. Giancontieri's role in the household and the economist's testimony concerning the cost of obtaining a housekeeper were sufficient to allow the jury to infer that $200,000 was proper compensation for this item. The jury's award is supported by the record and will be allowed to stand.

### D. Prejudgment Interest

Pan Am requested that the court not award legal interest from the date of judicial demand on all sums awarded for *future* losses. The district judge denied this request, because under La.Rev.Stat. 13:4203, legal interest is recoverable from the date of judicial demand on all claims arising *ex delicto*. Pan Am does not argue that section 13:4203 does not apply, but argues that as a matter of economics and constitutional law it cannot apply to awards for future losses, since by definition the plaintiff had no right to receive these sums as of the date of judicial demand. Pan Am's argument is, as a matter of economics, entirely sound.[11] The Louisiana courts have, however, interpreted section 13:4203 to allow an award of interest on future

damages as well as present damages. *Schackai v. Tenneco Oil Co.*, 436 So.2d 729, 735 (La.App. 4th Cir.), *writ denied,* 440 So.2d 759 (La.1983). In a diversity case, we are bound to follow this interpretation of the will of the Louisiana legislature.

### IV. Other Miscellaneous Points of Error

Travelers Insurance Company was included as a party in the judgment, although the parties stipulated prior to trial that all defendants other than Pan Am and the United States would be dismissed with prejudice. Counsel for Giancontieri conceded at oral argument that this stipulation was properly made. Travelers should therefore be removed as a party defendant.

Giancontieri makes sundry other allegations of error: The district judge was biased against him, the district judge erred in allowing post-trial supplementation of the record to reflect the contents of an in limine ruling, the district court forced him to waive his claims for future loss of income and future medical expenses, the award for loss of contents of the house is inadequate, the district judge improperly restricted the testimony of his expert witnesses, and the district judge forced him to stipulate to both the amount of funeral expenses and the amount of his past medical expenses. After examining these contentions and the record, we find them to be without merit.

### CONCLUSION

Pan Am is granted a new trial on the claims for the loss of love and affection of his wife and children unless Mr. Giancontieri agrees to a remittitur of the awards for these items to the amounts set forth in part II of this opinion. To the extent the judgment of the district court includes the awards for Sandra Giancontieri's conscious pain and suffering and for Mr. Giancontieri's distress over the loss of his property,

**11.** Pan Am also contends that this application of the statute is unconstitutional, but has supplied no reasoning to support this position, and none is obvious.

it is REVERSED. The judgment is in all other respects AFFIRMED.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

TATE, Circuit Judge, dissenting in part:

I concur in much of the thoughtful opinion of my esteemed brethren of the majority. Nevertheless, with regret, I must dissent from the reduction of the awards to the bereaved plaintiff husband/father for the loss of love, affection, and companionship of his tortiously killed wife from $1,000,000 to $500,000, and for the loss of love, affection, and companionship of his three minor children from $400,000 to $250,000 each.[1] In this regard, it is of note that the able and experienced district court, with its superior opportunity for factual evaluation, had itself previously passed on the defendants' motions for remittitur, after the jury verdict, and had reduced the jury award of $1,500,000 for loss of the wife to the $1,000,000 (now further halved by the majority), but had refused to disturb the award for the loss of love, affection, and companionship of the three children.

*Overview*

On July 9, 1982, the Pan American aircraft crashed into and destroyed the home and killed the entire family of the plaintiff Giancontieri, then 31 years of age. He lost his wife, Sandra, his high school sweetheart to whom he had been married for eight years, and all three of his children, his three sons, aged six years, four years, and three months. On evidence reasonably accepted by the jury, it could have found that Giancontieri's entire life was wrapped up in his family and that, at the moment of the loss (recognized by the majority as the testing point), his entire reason for living was destroyed by his grief—grief thus intensified as to each member of his close-knit family because of the destruction of his entire family.

Paying only lip-service to the proper standard of appellate review of jury awards (especially those that have been, as here, tested by the district court's review, in its disposing of post-trial remittitur motions), the majority concludes, without articulated explanation, that no more than $500,000 could reasonably have been awarded to Giancontieri for the loss of love, affection, and companionship of his wife, and no more than $250,000 for the loss of each child.

In short-hand terms, the fundamental error of the majority is its failure to recognize that, as a threshold matter, the award of damages is essentially a factual determination by the trier of fact under the particularized facts of each case—*not* a matter that on appellate review is to be scaled as allowable by a trier of fact only by the use of numbers derived from prior appellate approval of awards for losses of wives and children that were made under varying factual conditions; *not* as if the loss of a wife or the loss of a child represents some kind of a fungible loss to be measured interchangeably, so that the loss of any wife is the same as the loss of any other wife under all circumstances.

Essentially, it is only *after* an appellate court determines that an award is excessive under federal standards of appellate review, that utilization of past awards may become relevant in determining the amount to which a jury award should be reduced, for remittitur purposes, as the greatest amount awardable under the circumstances. Here, in effect, the majority determines that the present awards for the plaintiff's loss of his entire family, his wife and three little boys, is excessive—without reviewing the particular circumstances of the *present* loss—essentially because it is greater than any award found reported in federal or state appellate decisions that had approved a particular trial jury's award of lower damages for loss of a wife or a child (under circumstances, however, that differ markedly from the present).

---

1. I also dissent from the majority's reversal on appeal of the award of $15,000 for the deceased wife's pre-death pain and suffering. See Part IV of this dissent below.

In the succeeding parts of this dissent, I will elaborate these views, as follows:

I. The federal standard of appellate review of damage awards for excessiveness was not applied by the majority;

II. *Erie Railroad v. Tompkins* does not under Fifth Circuit and preponderant federal jurisprudence require that a federal appellate court, sitting in a diversity case, apply a state standard of appellate review as to the trier of fact's determination of quantum; and

III. Even if the Louisiana standard did apply, it would not justify tampering with the present awards.

This dissent will also note that:

IV. The majority erred in reversing any award for the deceased wife's conscious pain and suffering before her death.

## I.

In *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983), we recently summarized with citation of authority this circuit's standard for appellate review of jury awards:

We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to." Nonetheless, when a jury's award exceeds the bounds of any reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so. Our power to grant a remittitur is the same as that of the district court. We determine the size of the re-

mittitur in accordance with this circuit's "maximum recovery rule," which prescribes that the verdict must be reduced to the maximum amount the jury could properly have awarded. (Emphasis in original) (footnotes omitted).

The "size of the award a plaintiff is entitled to is generally a question of fact, and the reviewing court should be 'exceedingly hesitant' to overturn the decision of the jury—the primary factfinder—and the trial judge who concurred with its verdict." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir.1982) (affirming $600,000 award, in Mississippi diversity case, for lost wages, expenses, and mostly for pain and suffering).

Again, in affirming a jury award and in emphasizing the limited scope of appellate review for reversal on the grounds of excessiveness, we stated in *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880:

This court has said that reversal should occur only for "grave abuse of discretion," or only if the verdict is "so gross or inordinately large as to be contrary to right reason," or only if there has been a "clear abuse of discretion with respect to assessment of damages." *See Rosiello v. Sellman*, 354 F.2d 219 (5th Cir.1965); *Machado v. States Marine-Isthmian Agency*, 411 F.2d 584 (5th Cir.1969); *Ward v. Buehler*, 472 F.2d 1170 (5th Cir.1973).

The rationale behind employing such a strict test on review is fairly simple. The size of the award a claimant is entitled to is generally a question of fact. A panel of impartial jurors that had an opportunity to hear all the evidence and observe all the witnesses first decided that question. The trial judge, with a similar opportunity to hear and observe, then concurred with the propriety of the panel decision when he or she denied the defendants' motion for a new trial. A reviewing court should be exceedingly hesitant in overturning the decision of the jury and the trial judge. The appellate court's decision must necessarily be made without the opportunity to observe

the claimant and the various other witnesses. Also, the factors which must be considered in determining the amount of money a claimant is entitled to are not readily translated into dollar amounts. In most cases, there is no reason to assume that a three judge appellate court is better equipped to make this translation than a panel of jurors or the trial judge. In fact, the opposite assumption is probably more appropriate. It is therefore, only on a very rare occasion that a jury verdict, approved by a trial judge, should be overturned. This is the case whether we use "abuse of discretion," "clear abuse of discretion," "shocking to the conscience," or "monstrous," as the test to be applied on review. It is only when the award received by the claimant clearly exceeds that amount that *any* reasonable man could feel the claimant is entitled to that the case should be reversed, and it is within this very limited scope of review that we now examine the amount of money awarded to plaintiff for his injuries. [Emphasis in original.]

*See,* generally (to same effect), 11 Wright and Miller, Federal Practice and Procedure, § 2820 (1973).

At perhaps unnecessary length I repeat what have been long regarded as established principles of the limited nature of appellate review. I do so, because in my view the panel departs from them with but cursory reference, in determining that the present awards were excessive without first examining and explaining why our judicial conscience should be shocked, or why these awards "clearly exceed the amount that *any* reasonable man could feel the claimant is entitled to," *Bridges, supra,* 553 F.2d at 880. It seems to me that we cannot do so without examination of the particular facts before us, when in a few short seconds the tortious act of the defendants killed the claimant's wife and three little boys, the center of the claimant's life, and the focus of his hopes, ambitions, and happiness, and destroyed through his grief at this loss his reason for being, under record evidence reasonably

accepted by the trial jury. I simply cannot say that this award is manifestly excessive under its facts.

I am re-enforced in this view by the circumstance that motions for new trial remittitur were presented to the district court, which then passed on them. This able and experienced district judge saw and heard the witnesses; unlike appellate judges secluded in their appellate chambers from the ongoing realities of everyday life, he is familiar with the everyday monetary evaluation jurors drawn from the community place on varied losses in the multitude of cases tried before him (and is also familiar with the many cases brought before him and settled by the attorneys in accordance with their knowledge of the pragmatic evaluation by jurors of monetary amounts appropriate for losses)—the multitude of pragmatic jury evaluations of monetary worth appropriate to compensate victims in the ongoing twentieth century world of (what we from yesterday's active law-practice may regard as) inflated values of food, shelters, automobiles, appliances, and, yes, personal injuries or losses. Here, the district court did not rubber stamp the jury award; carefully considering the contentions of excessiveness, it reduced by remittitur the jury award of $1,500,000 for loss of the wife to $1,000,000, although affirming the jury award for the loss of the plaintiff's three young boys.

Our jurisprudence recognizes the better ability of district judges to evaluate excessiveness and requires great deference to the district court's actions with regard to requests for remittitur. "Where the trial court has already invoked its discretion in granting a remittitur, our scope of review is even narrower than usual." *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 574 n. 7 (5th Cir.1979). For appellate purposes, the issue is whether the trial judge abused "his necessarily broad discretion," and the trial judge's view "deserves considerable deference." *Gorsalitz v. Olin Mathieson Chemical Corporation,* 429 F.2d 1033, 1046 (5th Cir.1970). "If a trial court has denied a new trial on condi-

tion that plaintiff consent to a remittitur and plaintiff has consented, the possibility is remote that the appellate court will find that even the reduced verdict is excessive." 11 Wright and Miller, *supra,* § 2820 at pp. 135–36.

The majority does not discuss the application of this principle to the present appeal. As I (perhaps unfairly) read the majority opinion, it bypasses discussion of this further jurisprudential limitation upon appellate tinkering with factual awards, and simply states, without explanation related to the present facts or otherwise, that "we have no doubt that the awards for loss of love and affection in this case are excessive and constitute an abuse of the trier of fact's discretion." 767 F.2d at 1156.

The determination of excessiveness made (without explanation), the majority proceeds to examine Louisiana appellate decisions on quantum awards, as if they represented any substantive law of Louisiana as to the damages that could be recovered (a view critically examined in Part III of this dissent), on the assumption that this could be appropriate under *Erie Railroad v. Tompkins* (a view critically examined in Part II of this dissent). The only federal appellate award relied upon is that made in *Caldarera v. Eastern Air Lines, supra.*

*Caldarera* did reduce the award to its plaintiff husband to $250,000 from the $400,000 awarded by the trial court, and it found that the portion of the general award for the loss of one (of his two) sons could be no more than $225,000. 705 F.2d at 785. In so doing, the *Caldarera* court found a "jury award in excess of this sum to be so gross as to be contrary to reason." 705 F.2d 786. Although *Caldarera* used some Louisiana appellate awards in fixing the maximum amounts awardable by the jury, 705 F.2d at 785 n. 23, it also referred to other federal awards, *id. Caldarera* did *not* rely upon any *Erie* principle as furnishing from Louisiana state law the maximum that could be awarded.

That *Caldarera* did not intend to fix a maximum amount allowable in a Louisiana diversity case for the loss of a wife or child

is made manifest by the subsequent decision in *Winbourne v. Eastern Airlines, Inc.,* 758 F.2d 1016 (5th Cir.1984). In *Winbourne,* the district court awarded the plaintiff $500,000 for the loss of love and affection of his wife. Specifically rejecting the defendant-appellant's argument that "in *Caldarera* this court specifically held the sum of $250,000 was the maximum award that could be allowed for the emotional losses arising from the death of the wife," 758 F.2d at 1018, we stated, in affirming the award, "[w]e cannot judge the justification of damages by mere comparison with the awards upheld or reversed in other cases. Each case presents its own facts." *Id.*

In rejecting any excessiveness issue, the *Winbourne* court also pointed out the record facts of particularized injury resulting from the death of a wife and two children and close family relationship. Again, *Winbourne* neither explicitly nor implicitly makes reference to an *Erie*-bound state standard of damages as applicable; it simply, in accord with past practice of federal appellate review for excessiveness, determines that the present award did not justify appellate tinkering. It explicitly rejects the use of prior appellate awards as a basis for determining whether the present award, under its own unique facts, is excessive. I point out that, under *Winbourne*'s specific rationale, the circumstance that *Winbourne* found no excessiveness in *that* trial jury's verdict allowing $500,000 for the husband's loss of his wife's love and companionship, does not in the least indicate that *Winbourne* would have found an award of $1,000,000 by another trial jury excessive under the same facts—and even less does it indicate that *Winbourne* is authority that an award exceeding $500,000 is excessive if made by another trial jury on totally different facts.

For those who like their law to be neat and governed by precise rules, it may be troublesome that the threshold guide to the appellate determination of excessiveness, whether a jury award shocks the appellate judicial conscience, "cannot be supported

entirely by rational analysis" but is instead "inherently subjective, in large part involving the interplay of experience and emotions as well as calculation." *Caldarera, supra,* 705 F.2d at 784. Upon reflection, it will be seen, however, that the jurisprudentially defined and exceedingly narrow federal scope of review of excessiveness cannot, by its very exceptional nature, be more precisely defined—any more than can the amount of general damages awardable be fixed as a matter of law but is instead entrusted to the broad discretion of the trier of fact.[2] For an appellate court to attempt to formulate precise appellate rules for determining excessiveness is to attempt to assert through precise rules appellate control—and to permit appellate tinkering—with an area of factual and discretionary determination entrusted to the trier of fact. The jurisprudence earlier cited firmly cautions against appellate intervention in the fact-bound award of damages by a trial judge or jury, except in extraordinary situations where beyond doubt no reasonable jury or judge could, under the particular facts at issue, have made the award now questioned on appeal.

In a different context (*i.e.,* the review of factual determinations by a district court), the Supreme Court has recently re-stated a fundamental institutional reason for an appellate court not to re-decide matters on review that have been entrusted by constitution and statute to determination by the trial judge or jury. In *Anderson v. City of Bessemer City, North Carolina,* —— U.S.

—— , 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), the Court recently reiterated:

The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' . . . rather than a 'tryout on the road.'" *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977).

Because this dissent is already overlong, I will do no more than advert to the once-held doctrine that the Seventh Amendment bars appellate review of jury awards or of the district courts' grant or denial of remittitur (inherent under the common law in trial but not appellate courts), which was affirmed in two never-overruled Supreme Court decisions. *Fairmount Glass Works,* 287 U.S. 474, 481–2, 53 S.Ct. 252, 254, 77 L.Ed. 439 (1933) (Brandeis, J.); *Southern*

**2.** In Louisiana, for example, the Civil Code states: "When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La.Civ.Code art. 1999 (1985), being a recodification of the same principle expressed by former La.Civ.Code art. 1934(3) (1970) that was replaced by the 1985 recodification. Reversing appellate tinkering with trial awards, the Louisiana Supreme Court has repeatedly made plain that the Code article entrusts great discretion to the *trier of fact* in the monetary awards to be made for such general damages, and that on appeal the only issue that may be raised is whether there was a clear abuse by the trial court in the award of damages

under the particular facts before it, without reference to prior awards made in other decisions involving ostensibly similar injuries. *See, e.g., Reck v. Stevens,* 373 So.2d 498 (La.1979); *Coco v. Winston Industries, Inc.,* 341 So.2d 332 (La.1977); *Lomenick v. Schoeffler,* 200 So.2d 127 (La.1967); *Gaspard v. LeMaire,* 245 La. 239, 158 So.2d 149 (1963). The amount of quantum awarded by a trial court is consistently characterized as purely a factual issue under the circumstances of that particular case, entrusted for determination to the great discretion of the trier of fact, with no fixed amount alone being allowable as a matter of law. See Part III of this dissent.

*Railway-Carolina Division v. Bennett,* 233 U.S. 80, 86, 34 S.Ct. 566, 567, 58 L.Ed. 860 (1914) (Holmes, J.). *See* discussion at 11 Wright and Miller, *supra,* § 2820, which treatise there further indicates that, nevertheless, all federal appellate circuits have assumed the power to review for excessiveness under narrowly defined circumstances. While perhaps the seventh amendment protection of jury quantum verdicts against appellate tinkering no longer obtains as an absolute bar to the expansion of their quantum review powers assumed by the federal appellate circuits, an underlying seventh amendment concern—against appellate judges disturbing from on high the verdicts in trial courts by lay juries drawn from the community—may indicate that this assumed power of the appellate circuits to review for excessiveness must, at the least, be exercised sparingly (and not merely because two or three appellate judges believe that a trial award is too high).

## II.

The present version of the majority's opinion disclaims its uncritical acceptance of the defendant Pan Am's contention that somehow *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires, for federal appellate determination of excessiveness, that, in this Louisiana diversity case, we must undertake an examination of awards made by Louisiana appellate courts.[3] Nevertheless, the majority's approach in reducing the present award retains elements of that reasoning. The majority's failure to reject outright this contention prompts this portion of the dissent.

I assume that, at this late date, we need not re-examine *Erie* and its progeny, in stating that *Erie* requires only that the state's substantive law be applied by federal courts in diversity cases, but that federal principles of procedure, including principles of appellate review and of judge-jury relationship, govern the procedural determina-

tion of diversity cases in federal courts. *See,* e.g., 19 Wright, Miller, and Cooper, Federal Practice and Procedure, §§ 4501–4513 (1982).

The issue of excessiveness posed on federal appellate review is whether the federal district court abused its discretion in granting or failing to grant a new trial conditioned on remittitur of damages allegedly excessive, under the particular facts in the case tried before that trial court. The federal appellate court is itself limited in its factual review of a jury verdict by a restricted standard of power of appellate review emanating in essence from Seventh Amendment restrictions on the power of federal courts to tamper with jury verdicts. It seems evident that no question of *Erie* -controlling state substantive law is implicated by state appellate decisions, as to whether under state standards of appellate review a state trial-award was or was not excessive under the particular facts before the state courts. The state appellate decisions in the particular instances no more represent state substantive law than does one trial-jury's quantum award bind as a matter of state law another state trial court in its award of damages for similar injuries in another case.

As stated by an authoritative treatise,

The grant or denial of a new trial is a matter of procedure governed by [the Federal Rules] and not by state law or practice. There has been an occasional dictum to the contrary, and some slight tendency to look to state law on such questions as ordering a remittitur or reviewing the excessiveness of a verdict, but this seems quite unsound. The incidents of jury trial are for the federal courts to decide for themselves, guided by the Seventh Amendment, and are not a matter on which state law should be given any effect. And even if this is thought to be an unfettered *Erie* choice, within the doctrine of *Hanna v. Plumer* [380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8

**3.** In Part III of this dissent below I will note that, even if this contention were correct, Louisiana appellate methodology would not require that the present awards be determined excessive.

(1965)] it seems beyond belief that parties would resort to forum shopping in order to have a more favorable rule on granting new trials.

11 Wright & Miller, *Federal Practice and Procedure*, § 2802, pp. 29–31 (1973).

The Fifth Circuit early reached much the same conclusion. In *Reid v. Nelson*, 154 F.2d 724 (5th Cir.1946), the defendants contended that under *Erie*, federal trial courts sitting in diversity "should follow the state supreme court [of Florida] which holds that it is its right and duty to consider the question of excessiveness of verdict and order it reduced in the event it is deemed excessive." *Id.* The Fifth Circuit rejected this argument, stating that the Seventh Amendment deprives federal appellate courts of the power to consider the excessiveness of a verdict, *id.*, and that "the decision in *Erie* could not have the effect of requiring this Court to follow the state court in disregard of the Seventh Amendment." *Id.* at 726.

Again, in *New Amsterdam Casualty Company v. Wood*, 253 F.2d 71 (5th Cir. 1958), the district court had denied the defendant's motion for a remittitur and had entered a judgment for the amount awarded by the jury. On appeal, the court stated:

> [The defendant] contends that the Louisiana Courts, applying Louisiana law, would in a like case review the judgment and set it aside, and that this Court, under the doctrine of *Erie* . . . should do likewise. Unless the verdict is excessive as a matter of law, and the district judge transcended his discretion in declining to set the verdict aside and thus committed an error of law, the Seventh Amendment to the Federal Constitution precludes our reversing the district court's judgment because of the amount of the verdict. The decision in *Erie* . . . does not require or permit us to follow the state practice in disregard of the Seventh Amendment.

*Id.* at 72 (citations omitted). *See also,* 9 Wright & Miller, *Federal Practice and Procedure* § 2525, p. 553 & n. 76 (1971)

("federal test applies in setting aside a verdict as against the weight of the evidence of excessiveness and on the scope of review"; citing *Wood* with approval).

These decisions have been cited with approval over the years and (as to the *Erie* issue) have never been overruled, so far as I can ascertain from shepardizing them. Although scattered decisions of this circuit mention the principle that the measure of damages (i.e., what items of damage may be recovered) is substantive and thus governed by state law, and sometimes mistakenly have done so with regard to quantum review, no circuit decision that I can find explains on any articulated basis why under *Erie* any controlling state substantive law is represented by state appellate decisions as to whether, under particular facts, a state trial judge had or had not abused its discretion in denying remittitur.

*Lowe v. General Motors Corporation,* 624 F.2d 1373 (5th Cir.1980), cited by the majority, does refer to the state determination of excessiveness under state law, 624 F.2d at 1382, and does state (without explanation or discussion) that "the state standard above would apply to the substantive issue of whether the verdict in this case was excessive." The court continues, however, that, "a Federal standard applies to determine the slightly different procedural question of whether a Federal District Court, sitting in diversity, should automatically grant a new trial on the basis of excessive damages." 624 F.2d at 1383 (citing Wright and Miller, *supra*, § 2802, quoted in full at 767 F.2d 1166 at the beginning of Part II of this dissent, which states that *Erie* does *not* apply). In finding the award excessive, the *Lowe* panel cites solely federal decisions. *Id.*

I do not regard *Lowe*'s unarticulated assumption that excessiveness is a matter of state substantive law, by way of dicta, as authority for departing from the early and never-overruled decisions of this circuit, in accord with the preponderant federal decisional law [4] and with treatise authori-

---

**4.** At footnote 4, 767 F.2d at 1155, the majority cites decisions of the Eighth Circuit, and a deci-

ty, to the following effect: No *Erie* principle requires us, in our exercise of federal appellate procedural review, to accept as substantive law factual state appellate decisions that have decided, under particular facts then before the state court (and by state standards of appellate review), whether a quantum award is or is not excessive.

### III.

Insofar as utilizing a state standard of review, the majority apparently would find the present awards to be excessive in the light of state appellate decisions *affirming*, as *non*-excessive, lesser awards for the loss of the love and companionship of a wife or child, under differing facts. The lack of doctrinal or logical basis for such a test has already been explored. However, because en banc or Supreme Court review might be sought, I think it appropriate to note that, even if such a standard were applicable, the majority has misapplied Louisiana quantum law, and for me to provide ready reference to Louisiana decisional authority.

By way of procedural overview, I note that—unlike federal appellate courts, restricted by Seventh Amendment principles to the review of issues of law—the Louisiana appellate courts are constitutionally entrusted with a scope of review that "in civil cases extends to *both* law and facts." La. Constitution of 1974, Article V, Section 5(c) (state supreme court) and Section 10(B) (intermediate courts of appeal). Equivalent provisions were contained in prior state constitutions.

Based upon this constitutional power of fact review, the Louisiana intermediate appellate courts for many years exercised a rather free review of quantum awards. In the course of the years, a body of jurisprudence developed as to the range of appropriate awards for various types of injuries that became closely akin to substantive rules in practice.

However, commencing in 1963 with *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d

149 (1963), and consistently thereafter, the state supreme court has rejected this approach and has emphasized, in reversing intermediate courts that tampered with trial awards, that the amount of an award for general damages is solely a factual issue that is entrusted to the great discretion of the district courts, based upon Louisiana's civil code. *See* note 5 *supra.* The rationale and methodology may be most persuasively conveyed by citation from the Louisiana jurisprudence.

In *Gaspard, supra,* the state supreme court stated, 158 So.2d at 158:

The primary question before the appellate court, then, is whether the judge or the jury in fixing the amount of the award has abused its great discretion vested in them by law.... [Prior decisional awards] relied upon may be similar in that each of them involve a similar injury such as broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances peculiar to the case under consideration. The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case.

In *Lomenick v. Schoeffler,* 250 La. 959, 200 So.2d 127 (1967), the supreme court again had occasion to reverse an intermediate court for reducing a trial award, stating, 200 So.2d at 132 (emphasis added):

The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the *facts* reveals a *clear* abuse of discretion vested in the trial court.... The facts and circumstances in the other

---

sion of the Second Circuit, which are at variance from the views expressed by the other

circuits, including the decisions of the Fifth Circuit cited in this Part II.

neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of *this* award.

In *Reck v. Stevens*, 373 So.2d 498 (La. 1979), the supreme court again reversed an appellate court's reduction of a trial award and again firmly held that the award of general damages is a matter entrusted to the very great discretion of the trial court. It then once again reiterated the limited function of an appellate court in reviewing for excessiveness a trial award, 373 So.2d at 501 (emphasis added):

> *Before* a trial court award may be questioned as inadequate or excessive, the *reviewing court must look first, not to prior awards, but to the individual circumstances of the present case.* Only *after* analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.

*    *    *    *    *    *

Thus, the *initial* inquiry must *always* be directed at whether the trier court's *award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion,"* La. Civ.C. art. 1934(3) in the award of damages. It is only *after* articulated analysis of the facts disclose an abuse of discretion, that the award may on appellate review, *for articulated reason,* be considered either excessive, *Carollo v. Wilson,* 353 So.2d 249 (La.1977); *Schexnayder v. Carpenter,* 346 So.2d 196 (La.

1977), or insufficient, *Olds v. Ashley,* 250 La. 935, 200 So.2d 1 (1967). Only *after* such determination of abuse has been reached, is a resort to prior awards appropriate under *Coco* for purposes of then determining what would be an appropriate award for the present case.

In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function—if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination *only* where, *on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries,* see *Coco* at 341 So.2d 334.

However, *absent an initial determination that* the trial court's very great discretion in the award of general damages *has been abused under the facts of this case,* the reviewing court should not disturb the trier's award. *Wilson v. Magee,* 367 So.2d 314 (La.1979).[5]

Under Louisiana jurisprudence, in summary, the amount of an award for a particular injury never represents an issue of substantive law. Even for state review, the circumstances that the highest prior affirmed state award for the loss of a wife may have been $500,000 is not determinative of whether, under the facts *now* before the court, an award of $1,000,000 is excessive. *Before* reaching the issue of prior awards, if we were a state appellate reviewing court, we must *first* determine that the "trial court's very great discretion in the award of general damages has been

---

5. In presumed reliance upon Louisiana law, the majority would adopt an appellate methodology by which excessiveness of an award for general damages is measured by those made for generically similar injuries in prior decisions. As noted, whatever the Louisiana appellate methodology may have been prior to 1963, its present appellate methodology rejects this view, reasoning that a quantum award is a fact-determination within the very large discretion of the trier of fact under the particularized and differing facts of each case, as to which prior awards

have little relevance in the initial determination of whether the trier of fact abused its discretion. Prior awards under different factual circumstances thus do not control awards thereafter made in a society of changing values and circumstances, including the inflationary changes that sometimes subsequently occur. It is indeed ironic that a federal court should adopt this methodology as appropriate to a Louisiana diversity case, when the Louisiana appellate courts themselves have now rejected it.

abused under the facts of this case", *id.* —and, for reasons earlier stated in the *Overview* section of this dissent, I could not so find. Nor, if I were concerned that the present award was greater than any previous affirmed award, could I find "on an articulated basis [that] the present award is shown to be greatly disproportionate to prior awards ... for (*truly* ) 'similar' injuries", *id.*

However, we are not state appellate judges exercising under the state constitution the power to review fact determinations, albeit much limited in the scope of quantum review. We are instead federal appellate judges, sitting in review of a jury verdict in a federal district court (as already reduced by the federal district judge), exercising under federal standards a very limited review as to excessiveness and (unlike our state brethren) subject to Seventh Amendment limitations upon substitution of our appellate views for those determinations of the trial jury with which we may not agree.

My brethren of the majority err, in my opinion, in their appreciation of Louisiana principles applicable to quantum review and, even more, in finding that such Louisiana principles of appellate quantum review, whatever they are, might be relevant to the federal procedural issue now before us.

## IV.

Although the issue is less important than the previous ones, I must likewise differ from the reversal by my esteemed brethren of the majority of an award for the wife's conscious pain and suffering after impact.

The majority finds that there is no evidence in the record from which the jury could conclude that Mrs. Giancontieri suffered such conscious pain and suffering. In my opinion, the majority in so finding usurps the jury function in discounting evidence from which the jury could infer such conscious pain and suffering, however brief—the "crawling-type" position in which the wife was found, as if writhing in agony, and the circumstance that she died of 100% third degree burns that would not

cause instantaneous death but would take from five to thirty seconds. The circumstance that a pathologist "could not say" whether the decedents were conscious after the impact (nor could anyone else except the decedents, for that matter), does not amount to evidence negating pain and suffering.

The jury inferred from evidence susceptible of such inference that the wife suffered conscious pain and suffering before dying. I am unable to say how we, three appellate judges who are not experts in pathology or the effects of crashes, can so positively conclude that the aircraft impact instantaneously killed Mrs. Giancontieri, and could not, as the jury found, have only *almost* killed her instantly—leaving her aflame and in conscious agony for at least a few moments after the crash.

I should add that the trial jury's determination of the wife's conscious pain and suffering, and the district court's approval thereof, seem to have been considered. The jury disallowed any award for pain and suffering of the three children, at the same time awarding $100,000 for their mother's conscious pre-death pain and suffering. In denying a new trial motion raising the very issue of insufficiency of evidence now before us, the district court did not disturb the trial jury's determination that there was conscious pain and suffering, although it granted remittitur of damages to $15,-000.

The majority errs, in my opinion, in cursorily rejecting the considered trial determination of trial judge and jury that the evidence permitted an inference that Mrs. Giancontieri suffered conscious pain and suffering, however briefly, following the impact and before her death. I would affirm the award, rejecting the contentions of insufficiency of evidence, for much the same reason as another panel of this circuit rejected similar contentions recently in *Pregeant v. Pan American World Airways, Inc.,* 762 F.2d 1245, 1250 (1985):

That there is no direct evidence of conscious pain and suffering by Susan Savoie does not end our inquiry. In a ca-

tastrophe of these proportions, none reasonably may be expected. We must instead inquire whether there was evidence from which the jury reasonably could infer that Susan Savoie experienced post-impact pain and suffering, however fleeting. We find that there was. She was not dismembered. Her body was severely burned and was found in the braced position flight attendants are trained to assume and to have the passengers assume prior to a crash. The impact and disintegration of the aircraft extended over several seconds before the aircraft and its human contents came to rest. From this we cannot say that it was unreasonable for the jury to infer that Susan Savoie was conscious after impact and before her death, suffering during that period from either or both impact injuries and the exquisite pain of massive burns. Accordingly, we are not prepared to say that the jury erred in awarding $20,000 for post-impact pain and suffering.

*Conclusion*

My conscientious brethren of the majority have reversed determinations of the trial jury, approved by the trial judge. With deference to their views, I believe that in so doing they failed to observe applicable standards of federal appellate review and have, at least implicitly, extended the *Erie* principle so as to encompass as controlled by state law the federal procedural principles that do apply in federal appellate review of matters tried in federal courts.

Appellate courts have a tendency to aggrandize unto themselves the powers to right wrongs (as they see them), an institutional tendency to centralize justice-notions in themselves, which (regrettably) lends itself to bureaucratized rules of review—a tendency that flouts the fundamental principle that "the trial on the merits should be 'the main event' ... rather than 'a tryout on the road'", *Anderson, supra*, — U.S. at ——, 105 S.Ct. at 1512. I fear that, unwittingly, my esteemed brethren have by their decision contributed to this tendency to convert trial fact-issues into appellate law-principles so as thereby to be susceptible to bureaucratizing appellate supervision and control.

I respectfully dissent.