353 So.2d 249 (1977)
Janis Roy CAROLLO et al.
v.
Barbara WILSON and New Orleans Public Service, Inc.
No. 60079.
Supreme Court of Louisiana.
December 19, 1977.
*251 A. R. Christovich, Jr., New Orleans, for defendants-respondents.
J. Wayne Mumphrey, Tonry, Mumphrey & Dragon, Chalmette, for plaintiffs-applicants.
MARCUS, Justice.
Janis R. Carollo, wife of Anthony J. Carollo, and Anthony J. Carollo, appearing as head and master of the marital community existing between him and Janis R. Carollo and as administrator of the estates of his three minor children, Charles A. Carollo, Scott Carollo and Anthony J. Carollo, Jr., instituted suit against Barbara Wilson and New Orleans Public Service, Inc. seeking damages for personal injuries and recovery for property damages resulting from a collision between a station wagon, operated by Mrs. Carollo and containing the said minor children as passengers, and a bus, owned by NOPSI and operated by Barbara Wilson, at the intersection of North Claiborne Avenue and Desire Street in New Orleans. The intersection was controlled by an electric traffic signal. Trial by jury resulted in a general verdict in favor of Janis R. Carollo in the sum of $500,000; Anthony J. Carollo, as administrator of the estates of Charles A. Carollo in the amount of $1,000,000, Scott Carollo in the amount of $20,000, and Anthony J. Carollo, Jr. in the amount of $300, and against defendants in solido.[1] Trial judge signed a judgment in accordance with the verdict of the jury.[2] Defendants appealed.
Court of appeal first concluded that the jury's finding on liability was fully supported by the record. On the question of quantum, the appellate court found that the jury had abused its much discretion in fixing damages for Janis R. Carollo, Charles A. Carollo and Scott Carollo. Accordingly, the court reduced the awards for Janis R. Carollo from $500,000 to $80,000, Charles A. Carollo from $1,000,000 to $400,000, Scott Carollo from $20,000 to $10,000. The court of appeal expressed the opinion that the reductions were to the maximum amounts reasonably within the discretion of the jury. The other awards were not disturbed. Plaintiffs were assessed the costs of appeal.[3] On application of plaintiffs, we granted certiorari to review the correctness of the appeal court's decision reducing these three awards.[4]
*252 Plaintiffs contend that the court of appeal erred in finding that the jury abused its discretion in its awards for Janis, Charles and Scott Carollo and in reducing those awards. Plaintiffs also contend the appeal court erred in assessing the costs of appeal against them. We first address the quantum issue.
The courts of appeal have a constitutional duty to review the law and facts and thereafter render a judgment on quantum based on the merits, determining whether the jury has abused its "much discretion" that the law accords it in awarding damages. La.Const. art. 5, § 10(B); La.Civil Code art. 1934(3); Temple v. Liberty Mut. Ins. Co., 330 So.2d 891 (La.1976). Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977); Anderson v. Welding Testing Laboratory, 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974). In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering it to the highest point which is reasonably within the discretion afforded the trier of fact. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Coco v. Winston Industries, Inc., supra.
Accordingly, in the instant case, we must first examine the record to determine whether the record clearly reveals that the jury abused its discretion in its awards for Janis, Charles and Scott Carollo. If we find that the jury abused its discretion, the awards should be reduced to the maximum amounts which are reasonably within the discretion of the jury. Only then can we determine whether the court of appeal erred in making the reductions which it did.

JANIS R. CAROLLO
After the collision, Mrs. Carollo was pinned under the dashboard of the car with her cheek against the car's courtesy light. The light was on, and she sustained a third degree burn on her cheek. She also suffered a compression fracture of the fifth cervical vertebrae as well as several facial lacerations. She was hospitalized for about twelve days following the accident. Although Mrs. Carollo testified that she sustained five broken ribs and required 400 stitches to repair facial lacerations, the record contains no medical evidence in support of these contentions.
Dr. William J. Pollock, a plastic surgeon, treated Mrs. Carollo for the burn and lacerations on her face. He testified that she incurred a large circular third degree burn on her left cheek. He also found paralysis of the frontal zygomatic branch of the left facial nerve which resulted in her being unable to close her eye tightly. Dr. Pollock testified that the burn was not severe in terms of body surface affected (less than 1%) but was severe in terms of depth and location. The wound covered an area of about two inches in diameter. During the healing process, the wound granulated and closed rapidly. At this point in time, Dr. Pollock determined that it would not be necessary to do a skin graft. After the wound had completely healed, there remained a large oval shaped scar. Dr. Pollock then decided to surgically revise the scar to a linear shaped one. He considered that the latter would be far less noticeable, a cosmetic improvement. The procedure, similar to a cosmetic face lift, was performed under local anesthetic due to Mrs. Carollo's allergic reaction to various drugs. The operation lasted about two hours and required only one day of hospitalization. Subsequent examinations revealed that the wound was healing well; the stitches were removed two weeks after surgery. Although Mrs. Carollo would have a permanent linear scar, Dr. Pollock opined that its appearance would improve somewhat with time and that cosmetics would help reduce its visibility.
Dr. Kenneth L. Veca, orthopedic surgeon, treated Mrs. Carollo for a compression fracture of the fifth cervical vertebrae. He testified that the fracture was stable and presented no danger to the spinal cord. He prescribed a four-poster brace which she *253 wore for about a month. Thereafter, he prescribed a soft cervical collar which was worn by Mrs. Carollo for another five weeks. Mrs. Carollo complained of neck pain and headaches; Dr. Veca testified that the complaints were not unjustified. He opined that she would probably develop arthritis in the neck due to the injury and the degenerative process was already apparent. He estimated her disability at 15% of the whole body.
Drs. Irvin Redler and Wilmot Ploger, orthopedic surgeons, testified that their examinations revealed that Mrs. Carollo had sustained a compression fracture of the fifth cervical vertebrae which had healed well. They estimated the residual disability from 10-15% of the cervical spine (neck). Dr. Pollock also confirmed Dr. Veca's prognosis of the degenerative arthritic changes.
After careful review of the record, we find that the record clearly reveals that the jury abused its discretion in awarding $500,000 to Janis R. Carollo for the injuries sustained by her. We consider the maximum amount reasonably within the discretion of the jury to be $80,000. Accordingly, we do not find that the court of appeal erred in reducing the award to this amount.

CHARLES A. CAROLLO
Charles was seven years old at the time of the accident and was seriously injured. The medical evidence in connection with these injuries is voluminous but generally not in dispute. Hence, we do not consider it necessary to describe it in detail although it was carefully considered by us in evaluating quantum. Charles' gravest injury was brain damage. He remained in a coma for approximately two months following the accident. During this time, several complications developed, including urinary and lung infections and severe weight loss. Treatment was primarily supportive care: tracheostomy tube, urinary catheter, respirator, and feeding intravenously and through a gastronomy tube. Unexpectedly, Charles regained consciousness and was allowed to leave the hospital and go home where he was still fed through a gastronomy tube for some time. Charles' brain injury resulted in spastic paralysis, causing a 100% permanent disability of the left upper extremity and a 70% permanent disability of the left lower extremity. He can now walk unassisted but must wear a brace on both his left arm and leg. There was testimony about possible future operations which might render his left hand and leg more functional by fusing the wrist and ankle joints; however, it was opined that the operations would not significantly decrease his disability. The operations would probably eliminate the need for the leg brace but not that of the hand brace.
Evidence was also presented to establish the effect of the brain damage on Charles' intellectual ability and personality. The record reveals that he was at least of average intelligence prior to the accident but became dull-normal thereafter. A psychologist characterized his personality after the accident as passive-aggressive, i. e., one of hostility directed toward himself. The record contained medical testimony to support the fact that his personality changed after the accident and that this change was attributed to brain damage.
Damages were also sought for Charles' loss of earning capacity. Expert testimony was adduced to the effect that his employment possibilities were severely limited by his mental and physical disabilities. An economist testified regarding loss of wages based on a work-life expectancy of 43.4 years. A 3% annual productivity factor and a 4% annual inflation factor were used in the calculations. Charles' earning capacity was computed on the basis of both a $2.30 per hour minimum wage and a $188 per week average manufacturing wage in Louisiana. The economist determined that the total work-life minimum wages ($1,240,476.62) discounted at 5% would entitle him to $303,782.05 today or, if discounted at 7%, to $192,999.37. On the other hand, the total work-life average manufacturing wages ($2,536,938.02) discounted at 5% would entitle him to an amount of $620,772.24 today or, if discounted at 7%, to $394,390.11.
*254 As previously indicated, the jury awarded $1,000,000 for Charles. The court of appeal calculated his loss of wages and estimated his maximum loss of earnings based on the evidence to be about $200,000. Moreover, the appeal court noted that counsel argued to the jury, without proper foundation in evidence, that Charles' loss of earnings were $620,000. The appeal court also noted that counsel's argument for general damages based on a money value per minute for the rest of his life may be an explanation for the excessive verdict.
We are unable to determine how much of the $1,000,000 awarded for Charles was attributed to loss of wages. However, we do feel that the jury might well have erred in failing to give proper credit for wages which Charles could possibly earn. In any event, after carefully reviewing the entire record, we find that the record clearly reveals that the jury abused its discretion in awarding $1,000,000 for Charles. We further find that the maximum amount reasonably within the discretion of the jury is $600,000. Accordingly, the court of appeal erred in reducing the award below this amount to $400,000.

SCOTT CAROLLO
Scott, four years old at the time of the accident, had impaired hearing. His hearing aid was broken in the collision. He was hospitalized for about seven days. While Scott had some facial lacerations resulting in minimal scaring, his most serious physical injury in the accident was a bilateral basilar skull fracture which healed without incident or any residual problem.
Our review of the record convinces us that the record clearly reveals that the jury abused its discretion in its award of $20,000 for Scott. We consider that the maximum amount reasonably within the discretion of the jury is $10,000. Hence, the court of appeal did not err in reducing the award to this amount.

COSTS
Defendants took an appeal from the jury verdict alleging error both in its finding on liability and the quantum of each of the five awards. Plaintiffs did not appeal. The court of appeal did not reverse the jury's verdict on liability but did substantially reduce three of the five jury awards. The court of appeal taxed the entire costs of the appeal court against plaintiffs.
La.Code Civ.P. art. 2164 accords the appellate court discretion to tax the costs of the appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
Plaintiffs contend that the court of appeal abused its discretion in taxing the entire costs of the appellate court against them since only defendants appealed and were only partially successful in their appeal. We agree. We believe that an equitable allocation of the costs of the appeal under the circumstances is an equal division between plaintiffs and defendants, one-half assessed to each.

DECREE
For the reasons assigned, the judgment of the court of appeal reducing the award for Charles A. Carollo to $400,000 is amended by increasing that award to $600,000; the judgment taxing all costs of the court of appeal to plaintiffs is amended to assess one-half thereof to plaintiffs and one-half thereof to defendants. In all other respects, the judgment of the court of appeal is affirmed. The costs of this court are also equally assessed between plaintiffs and defendants.
SUMMERS, DIXON and DENNIS, JJ., concur in part and dissent in part and would simply affirm the court of appeal judgment.
NOTES
[1] Verdict was also rendered in favor of Anthony J. Carollo and against defendants, in solido, for the sum of $34,000 for past and future medical and incidental expenses for the children and in the sum of $5,500 for past and future medical, property and incidental expenses for his wife. Any questions relating to these awards are not relevant here for reasons hereinafter stated.
[2] Judgment was also rendered in favor of plaintiff in reconvention, Commercial Union Insurance Company, and against defendants in reconvention, Barbara Wilson and New Orleans Public Service, Inc., in the sum of $2,525. Any question relating to this portion of the judgment is not relevant here for reasons hereinafter stated.
[3] 345 So.2d 601 (La.App. 4th Cir. 1977).
[4] 349 So.2d 336 (La. 1977). It is well settled that a judgment will not be amended either to benefit a party who has not applied for review or to the prejudice of a party at whose instance the writ issued where the opposing party has failed to make application seeking such an amendment. Gulotta v. Cutshaw, 283 So.2d 482 (La. 1973). Since defendants did not apply to this court for a writ of review, we do not consider the issue of liability nor whether the awards fixed by the court of appeal should be reduced below those amounts.