367 So.2d 314 (1979)
Rhonda Marie WILSON et al.
v.
N. W. MAGEE et al.
No. 62633.
Supreme Court of Louisiana.
January 29, 1979.
Bruce J. Borrello, Metairie, for defendants-respondents.
Daniel E. Becnel, Jr., Robert R. Faucheux, Jr., C. William Bradley, Jr., Barry J. LandryThe Law Offices of Daniel E. Becnel, Jr., Reserve, for plaintiffs-applicants.
MARCUS, Justice.[*]
Rhonda Marie Wilson[1] instituted suit against N. W. Magee, B. & G. Crane Service, Inc. and its insurer, Liberty Mutual Insurance Company, seeking damages for personal injuries sustained by her when a crane, being transported on a truck owned by B. & G. Crane Service, Inc. and operated by N. W. Magee, struck a pipe rack across *315 the road and fell onto the car she was driving. Trial by jury resulted in a verdict in favor of plaintiff with an award of $50,000 for past, present and future pain, suffering, mental anguish, permanent disfigurement and future disability; $12,500 for past, present and future medical expenses; and $12,500 for past, present and future loss of wages. The trial judge signed a judgment in accordance with the verdict of the jury except that the $12,500 award for medical expenses was made subject to a credit of $215.85 (the amount stipulated by the parties during trial as having been paid by defendants). Defendants' request for a remittitur as an alternative to a new trial was denied by the trial judge. Defendants appealed. It was stipulated by the parties that defendants did not contest the issue of liability on appeal; rather, the sole issue was that of quantum.
The court of appeal found that the record did not justify the awards for damages fixed by the jury. Accordingly, it reduced the award for general damages from $50,000 to $20,000; medical expenses from $12,500 to $6,126.98, the amount of medical expenses actually incurred; and set aside the award of $12,500 for loss of earnings. The appellate court further remanded the case to the trial court to determine the amount of unemployment compensation lost by plaintiff between the date of the accident (June 24, 1976) and the date the medical evidence sets forth that she was able to return to work (February 8, 1977).[2] On application of plaintiff, we granted certiorari to review the correctness of the appeal court's decision reducing these awards.[3]
The courts of appeal have a constitutional duty to review the law and facts and thereafter render a judgment on quantum based on the merits, determining whether the jury has abused its "much discretion" that the law accords it in awarding damages. La.Const. art. 5, § 10(B); La.Civil Code art. 1934(3); Carollo v. Wilson, 353 So.2d 249 (La.1977); Temple v. Liberty Mut. Ins. Co., 330 So.2d 891 (La.1976). Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Carollo v. Wilson, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La.1973); Walker v. Champion, 288 So.2d 44 (La.1973). In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering it to the highest point which is reasonably within the discretion afforded the trier of fact. Carollo v. Wilson, supra; Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Coco v. Winston Industries, Inc., supra.
We first address ourselves to the issue of whether the court of appeal erred in finding that the jury abused its discretion in awarding $50,000 in general damages to Ms. Wilson; and, if not, whether its reduction of the award to $20,000 was proper.
The record reflects that on June 24, 1976, N. W. Magee, an employee of B. & G. Crane Service, Inc., was operating a tractor-trailer loaded with crane equipment along the River Road. The boom portion of a crane, weighing approximately 5,000 pounds, struck a pipe rack overhanging the highway and fell upon plaintiff's car which was traveling immediately behind the tractor-trailer. Ms. Wilson emerged from the car in hysterics covered with shattered glass. She began to run toward a nearby building but fell down; she was helped to a seat in the car belonging to an eye witness. Shortly thereafter, she was taken by ambulance to the emergency room of Ochsner Foundation Hospital. She complained primarily of pain in her neck and head resulting from a blow sustained in the accident. According to the *316 examining doctor, she was suffering from severe cervical muscle spasm, fear, apprehension and nervousness. Medication was prescribed. Ms. Wilson returned the following day, complaining of pain over her entire body, particularly in her back and neck. She was given an injection and additional medication. Three days later, she again returned to the emergency room at Ochsner, at which time the doctor noted severe muscle strain and contusions. Ms. Wilson complained of continued headaches and back pain and of increased pain in her right knee. There was no change in the medication. The doctor prescribed heat to the affected areas and bed rest.
On June 29, 1976, Ms. Wilson visited Dr. Raul G. Reyes, a private physician, who hospitalized her for two weeks where she was given physiotherapy to the affected areas of her body. After discharge from the hospital, she was given a knee brace because of her complaints that her knee gave out on her when she attempted to walk. Her condition was followed by Dr. Reyes. On July 22,1976, Ms. Wilson visited another doctor, Dr. Kenneth E. Vogel, who found that she was suffering from a cerebral concussion, acute cervical strain and a musculo-ligamentous injury to the right knee. He urged her to continue conservative treatment with Dr. Reyes, which she did. Dr. Reyes advised her to attempt to walk without her brace from time to time. Upon one of these occasions, she fell and struck her knee resulting in increased pain of the knee. At this time, Dr. Reyes recommended consultation with an orthopedist. Ms. Wilson was examined by Dr. Stewart I. Phillips, an orthopedic surgeon, who recommended surgery to correct the recurrent dislocation of the patella. Surgery was performed on November 2, 1976. Recurrent dislocation of the patella was found and repaired. Evidence of a fresh osteochondral fracture and the "grossly unstable" condition of the knee was noted. Ms. Wilson was discharged from the hospital on crutches and wearing a cast on her right leg from thigh to the ankle. She wore the cast for a period of six weeks. The operation left a disfiguring scar on her knee. Also, Ms. Wilson's right thigh ended up smaller than her left one. Dr. Phillips found that approximately ten percent residual disability of the knee joint was expected.
Ms. Wilson, who was twenty-two years old at the time, testified that she was in shock immediately after the accident. She described the physical pain and mental anguish she suffered from the injuries sustained by her in the accident. She indicated that she still experienced pain in her knee, back and neck at the time of trial but was unable to take medication for this pain since she had become pregnant. She stated that she has walked with a limp since the accident and that her knee was still swollen. Also, because of the pain in her knee, she was unable to kneel. She also mentioned that there was no feeling in the bottom portion of her knee. Ms. Wilson further testified that the disfiguring scar on her knee caused her much distress as she liked to wear shorts and bathing suits.
After careful review of the record, we find that the evidence reasonably supports the award of general damages by the jury. We therefore conclude that there was no abuse of the "much discretion" vested in the jury when it awarded Ms. Wilson $50,000 in general damages. Accordingly, the court of appeal erred in reducing this award.
Next, we consider whether the court of appeal erred in reducing the award for medical expenses from $12,500 to $6,126.98.
It was stipulated at trial that the medical expenses incurred by Ms. Wilson amounted to $6,126.98. There is no evidence to reasonably support an award for future medical expenses. Dr. Phillips' report of February 8,1977, indicated that Ms. Wilson was recovering magnificently and that no further treatment was contemplated other than a final post-operative examination. Ms. Wilson stated that she had an appointment to see Dr. Phillips in May 1977 (trial of this matter was held on April 21, 1977). Her treating physician, Dr. Reyes, testified that he had not seen plaintiff since before the surgery. He did not state that *317 he anticipated seeing her again. None of the doctors who treated Ms. Wilson indicated that future medical expenses were likely. Thus, we conclude that the record clearly reveals that the jury abused its discretion in awarding Ms. Wilson future medical expenses. The record only supports an award of $6,126.98, the amount of medical expenses actually incurred and stipulated to at the time of trial. Accordingly, the court of appeal did not err in reducing the award to this amount.
Finally, we consider whether the court of appeal erred in setting aside the award of $12,500 for loss of wages.
Prior to the accident, Ms. Wilson had been employed as a substitute teacher three or four days a week at a salary of fifteen dollars a day. However, she had not worked as a teacher since school let out in May and did not plan to return to teaching in the fall. Rather, she had registered at Delgado to study to be an inhalation therapist. At the time of the accident (June 24, 1976), she was unemployed and was receiving unemployment compensation. After the accident, these payments ceased since she no longer was physically able to work. Dr. Phillips indicated in his report dated February 8, 1977, that she could return to work at that time. Also, after the accident, she had married and was pregnant at the time of trial. Although Ms. Wilson's injuries temporarily postponed her plans to attend school, there is no showing of any past, present or future loss of wages. Finding no evidence that reasonably supports an award on this account, we conclude that the jury abused its discretion in awarding Ms. Wilson $12,500 for loss of wages. The record only supports an award equal to the amount of unemployment benefits she lost during the time she was unable to work. Accordingly, the court of appeal did not err in setting aside the award for loss of wages and in remanding the case to the trial court for a determination of the amount actually due her.

DECREE
For the reasons assigned, the judgment of the court of appeal is amended to reinstate the award of $50,000 for past, present and future pain, suffering, mental anguish, permanent disfigurement and future disability made by the jury; in all other respects, the judgment of the court of appeal is affirmed.
SUMMERS, C. J., concurs.
NOTES
[*] Chief Judge James E. Bolin participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] After institution of suit but prior to trial, plaintiff married Keith Cammon. Since she is referred to as Rhonda Marie Wilson throughout the record, we will do likewise in this opinion.
[2] 359 So.2d 315 (La.App. 4th Cir. 1978).
[3] 362 So.2d 780 (La.1978).