BOUTALL, Judge.
This appeal arises from a judgment from the trial court awarding damages to the plaintiff for personal injuries sustained in an automobile collision.
On or about February 15, 1977 in the early evening the plaintiff, Earl Hill, was operating his automobile when he was struck by a motor vehicle being driven by the defendant Edwynne C. Murphy. As a result of this collision the plaintiff sustained various personal injuries to the upper portion of his body. Subsequently, Hill filed suit to recover damages for his personal injuries against Murphy as driver of the vehicle causing the collision and injury, his insurer State Farm Mutual Automobile Ins. Co. (hereinafter referred to as State Farm), and his employer Murco, Inc. Thereafter Murco, Inc. filed exceptions of insufficiency of Service of Process and no cause of action. Prior to a hearing of these exceptions the plaintiff voluntarily dismissed Murco, Inc. but reserved his rights against the remaining defendants.
Upon trial of this matter the lower court entered judgment in favor of the plaintiff and against the defendants Murphy and State Farm individually, jointly and solidarity in the sum of $11,767.59. From this judgment the plaintiff has taken a devolu-tive appeal. The defendants have answered the appeal contending that the plaintiff was not entitled to the award of special damages in the form of a loss of wages.
On appeal the issues presented for our determination concern the validity of the awards made by the trail court for general damages of pain and suffering and special damages for loss of wages.
-I-
Regarding the issue of general damages the record reflects that immediately after the accident on February 15,1977 the plaintiff was taken to the emergency room óf West Jefferson hospital for treatment. Examination by Dr. Carlos Gorbitz revealed that Hill had suffered a whiplash injury to the cervical region which was described as a cervical sprain. At that time the plaintiff complained of pain in his back, chest, and a feeling of numbness in his left arm and leg. Subsequently the plaintiff was admitted to the hospital on this same day for a period ending February 19, 1977. During his hospital stay several tests and x-rays were performed, he was placed in cervical traction, and medication was prescribed for the purpose of relieving pain. Examination of the plaintiff prior to his discharge by Dr. Gorbitz revealed that Hill had no significant abnormalities in the cervical region, but, he did complain of pain upon movement of this area. Also, the numbness experienced by the plaintiff in the area of the left arm and leg had improved greatly and Dr. Gorbitz requested that Hill continue to wear the cervical collar and use the prescribed medication.
*1213 On March 7,1977 the plaintiff visited Dr. Jack Winters for treatment of his injuries. Examination by Dr. Winters revealed that Hill had a complete range of motion in the neck without any muscle spasms. Nevertheless, the plaintiff continued to have mild tenderness in the left part of the neck and shoulder and the lower back. At that time the plaintiff complained of pain in these regions and a feeling of numbness in the left arm remained. Dr. Winters gave the following diagnosis: the plaintiff has suffered a soft tissue injury to his neck and lower back in the nature of ligamentous or muscular sprains with some nerve root irritation in the left arm; the plaintiff also had spondylolithesis but this was present prior to the accident. The next and last visit by the plaintiff to Dr. Winters occurred on April 11, 1977 whereupon the latter informed Hill that he could return to most of his recreational and vocational activities.
Based on the foregoing the trial court awarded $3,500 in general damages to the plaintiff for the pain and suffering associated with the injuries sustained by him.
In considering the validity of the trial court’s award of quantum we are obligated to apply the reasoning expressed by the Supreme Court in Coco v. Winston Industries, 341 So.2d 332 (La.1976). In that case the court states:
“ * * * * We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. ***** Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. * * * * It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.” Citations omitted.
Also See: Reck v. Stevens, 373 So.2d 498 (La.1979); Carollo v. Wilson, 353 So.2d 249 (La.1977). Upon a review of the record in the matter before us we find that the trial court did not abuse its discretion in making its award of general damages.
-II-
In considering the second item of damages at issue the evidence presented before us indicates that the plaintiff was an executive stock broker and vice-president of sales with the investment firm of Howard, Weil, Labouisse, and Freidrichs, Inc. In this position the plaintiff represented hundreds of clients with respect to numerous types of investments such as stock, bonds, options and other items. His primary income comes from commissions on the sale of investment items. As a result of the injuries sustained by the plaintiff in the accident in mid February of 1977 the plaintiff was unable to work in his position of employment for a period of approximately three months. However, during this period Hill was able to conduct some minor business by telephone. As indicated previously, Dr. Winters discharged the plaintiff to return to work on a part time basis in mid to late April and the plaintiff followed these instructions. Hill worked on a part time basis until June when he returned to work full time. The plaintiff seeks recovery for the income he lost as a result of his absence from his place of employment.
Based on the evidence indicated above, the trial court determined that the plaintiff was entitled to a recovery of a loss of wages for a period of three months, namely February 15-May 15, 1977. The lower court further determined that the plaintiff’s absence from his employment position in the early part of 1977 had no effect on his income for the following years of 1978 and 1979. From these findings the trial court held that the plaintiff was entitled to a recovery of $7,417.79 for loss of wages.
Upon a review of the record before us we find that there was no showing of any manifest error committed by the trial court as to its factual findings. Arceneaux v. *1214 Domingue, 365 So.2d 1330 (La.1978). Canter v. Koehring Co., 283 So.2d 716 (La.1973). However, we find that the trial court committed error in calculating the award for loss of wages.
At the trial, testimony was elicited from Dr. Angelo Agapos who was qualified as an expert in the field of economics and finance. He indicated that he used two basic methods in calculating the plaintiff’s loss of wages, namely the percentage method and the trendline analysis. In applying these two procedures to the case before us, Dr. Agapos relied upon the plaintiff’s tax returns for the years of 1972-79 as well as the plaintiff’s production figures for these same years. The final figures reached by Dr. Agapos were a loss of wages of $38,083 by using the percentage method and $29,836 under the trendline analysis. Of the two methods used here the trial court placed more confidence in the trendline analysis reasoning that it was more accurate. This figure represented the loss for the year of injury. However the trial court reasoned that the three month absence experienced by the plaintiff should be compensated by a mathematical formula showing a direct ratio of loss for 3 months as related to 12 months, applying that to the loss suffered.
If such a ratio is used, it must be applied to the expected salary, not to this loss which was computed to occur for that year without regard to the length of time away from work.
Upon consideration of the entire matter we believe that the loss of wages for a person in the position of employment as a commission stock broker cannot be determined with mathematical exactitude. Our belief is supported by the fact that there are numerous variables which affect the income of a person employed in this capacity. They include: market fluctuations, number of customers, actual sales, production levels as well as other items. In view of the fact that the methods used by Dr. Agapos relied merely upon production figures and income tax returns, and did not take into consideration the numerous other variables, we believe the figures for loss of wages reached by the two methods to be not completely reliable. We share the view of the trial court that these figures were excessive, and that plaintiff is entitled to something less. Because we determine that the trial judge was in error, we must set aside his award. We must then raise it to the lowest figure below $39,836 which is reasonably within the discretion of the trial court. We find this amount to be $15,000. Coco v. Winston Industries, supra.
Based on the foregoing we order that the judgment of the trial court be affirmed as to its decree concerning the award of $3,500 for general damages for pain and suffering, but amended and increased to award $15,-000 to the plaintiff for a loss of wages, and as thus amended, we affirm.
AMENDED AND AFFIRMED.