PAUL A. BONIN, Judge.
| T Tiffany Duncan, who was injured in a rear-end car accident, complains on appeal that, because she failed to identify one of her treating physicians as a witness on the required pre-trial disclosure, the trial judge erred in restricting her from calling the physician as a witness, from introducing his certified medical records, and from testifying about her treatment by the physician.
*703 State Farm Mutual Automobile Insurance Company, the insurer of Naidra Colon, and Mary Bartholomew and her insurer, Government Employees Insurance Company, answered Mrs. Duncan’s appeal. They assign as error the trial judge’s denial of their motions for directed verdicts, the trial judge’s allowing the introduction of medical bills during a re-direct examination of one of Mrs. Duncan’s doctors, the jury’s assessment of mental anguish damages in the amount of $5,000, and the jury’s assessment of special damages for lost wages and future medical expenses. State Farm also complains that the trial judge allowed Mrs. Duncan to introduce the deposition of Kim Sang as substantive evidence at the trial and seeks dismissal of Mrs. Duncan’s appeal on procedural grounds.
Mrs. Duncan previously sought our supervisory review in connection with the trial judge’s rulings preventing the testimony of the unlisted treating physician li>and the introduction of his medical records. Because we apply the law-of-the-case principle to those rulings which we previously considered, and because Mrs. Duncan has not shown palpable error in those rulings, we adhere to our prior rulings and reject these complaints. With respect to the restriction on Mrs. Duncan’s own testimony about her medical treatment, we reviewed the ruling under an abuse-of-discretion standard. But, having considered Mrs. Duncan’s proffer, we find that the restriction of her testimony on this point does not affect the amount of general damages awarded to her by the jury.
We review de novo the defendants’ contention that the trial judge erroneously denied their motion for directed verdicts and conclude that the trial judge correctly denied their motions. We review for an abuse of discretion the trial judge’s allowing the introduction of medical bills during a re-direct examination of Mrs. Duncan’s doctor and conclude that the trial judge did not abuse her discretion. We review for abuse of discretion the jury’s assessment of mental anguish damages in the amount of $5,000, and for manifest error its assessment of special damages for lost wages and future medical expenses. We conclude that the jury did not abuse its discretion in its assessment of general damages for mental anguish and that its awards for the items of special damage are not clearly wrong and are reasonable.
We have also reviewed Mrs. Duncan’s request for an appeal and the order signed by the trial court. We find that Mrs. Duncan perfected a timely devolutive appeal and deny State Farm’s request to dismiss her appeal. We have also reviewed the trial judge’s ruling admitting Mr. Sang’s deposition for abuse of discretion and find no abuse.
^Because we find no reversible error, we affirm the judgment of the district court. In the Parts which follow we explain in detail the reasons for each of our holdings.
I
Before addressing each of the parties’ assignments of error, we provide some background facts and procedural developments in this case.
On the morning of April 10, 2008, Mrs. Duncan, who was a school bus driver at the time, was driving her personal vehicle on Veterans Boulevard. The three vehicles following her were driven by Ms. Colon immediately behind her, followed by Mr. Sang, and then Ms. Bartholomew. There is no question that Mrs. Duncan’s vehicle was rear-ended at least once by Ms. Colon. And there is no question that Ms. Bartholomew’s vehicle struck Mr. Sang’s from the rear and that Mr. Sang’s *704 struck Ms. Colon’s from the rear. The jury found that all three of the following drivers were at fault in causing Mrs. Duncan’s injuries and damages.
Prior to trial, Mrs. Duncan settled her claim with Mr. Sang and his insurer and dismissed them from the lawsuit. Mrs. Duncan also settled her claim against her underinsured motorist carrier. Thus, at the time of trial Mr. Sang was no longer a party, but he had been deposed. Ms. Bartholomew and GEICO requested the issuance of a subpoena for Mr. Sang’s attendance at trial, but the sheriff was unable to effect service "on him at either of his two last known addresses.
Also, Mrs. Duncan had been unsuccessful in effecting service of citation and petition on Ms. Colon. The trial proceeded without issue having been joined with Ms. Colon, but her insurer, State Farm, had been cited and served as a party defendant under the direct action statute.
hSeveral months before the trial date, the trial judge had issued pre-trial orders which required disclosure of witnesses by a date certain. Mrs. Duncan missed the deadline date but eventually filed her list of witnesses. Her list did not identify Dr. Patrick Waring, one of her treating physicians.
II
In this Part, we explain why Mrs. Duncan’s pleading giving notice of her desire to appeal the judgment and the order which issued are sufficient to perfect her devolutive appeal.
The final judgment appellant appeals was read, rendered, and signed on November 2, 2010. The notice of signing of the judgment was issued on November 4, 2010. Neither party filed a motion for a new trial or a judgment notwithstanding the verdict. Mrs. Duncan filed her motion for an order of appeal[1] on December 23, 2010, and the order was signed on January 4, 2011. Because Mrs. Duncan obtained an order of appeal sixty-one days after the notice of signing of judgment, and because sixty-one days is within the delay allowed for a devolutive appeal, the order granting Mrs. Duncan a devolutive appeal was timely. See La. C.C.P. art. 2121.
Ill
In this Part we explain why we conclude that the trial judge did not abuse her discretion in admitting the deposition of Mr. Sang, who was not physically present at trial. The trial judge allowed the use of Mr. Sang’s deposition because she determined that he was “unavailable.”
|s“The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds ... [tjhat the witness is unavailable.” La. C.C.P. art. 1450 A(3)(a). “The trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion.” Boutte v. ABC Ins. Companies, 00-0649, p. 8 (La.App. 4 Cir. 2/6/02), 811 So.2d 30, 35.
*705 “[A] declarant is unavailable as a witness’ when the declarant cannot or will not appear in court to testify to the substance of his statement made outside of court.” La. C.E. art. 804 A. The broad definition of “unavailable” found in the Code of Evidence is limited, in part, by the fact that “[a] witness who is within the state is subject to subpoena and generally is not unavailable’ for Article 804 purposes.” Maraist, 19 La. Civ. L. Treatise, Evidence And Proof § 10.6 (2011), citing La. C.C.P. art. 1352, which provides, “A witness, whether a party or not, who resides or is employed in this state may be subpoenaed to attend a trial or hearing wherever held in this state.”
Mrs. Duncan relied on the subpoena issued by Ms. Bartholomew and GEICO, thinking that it would be an unnecessary expense to issue another subpoena after Mr. Sang had already been subpoenaed by other parties. The Code of Civil Procedure no longer prohibits such a reliance on an opposing party’s subpoena. La. C.C.P. art. 1450 A(3)(d), requiring that “the party offering the deposition has been unable to procure the attendance of the witness by subpoena,” was removed in 1990. Acts 1990, No. 134 § 1.
1 fiService was attempted on Mr. Sang multiple times; however, he was not served with a subpoena, and he was not present at trial. We have found nothing in the record to suggest that the trial judge abused her discretion in finding that Mr. Sang was “unavailable” and allowing the use of his deposition.
IV
We turn to explain why there is no legal error in the trial judge’s denial of the defendants’ motions for directed verdicts.[2] After the close of the plaintiffs case-in-chief, and outside the presence of the jury, the defendants argued that the plaintiffs case should be dismissed because she failed to prove: 1) who was at fault for the underlying accident; 2) who was driving the vehicle behind Mrs. Duncan’s; and 3) which insurance companies insured which defendants. La. C.C.P. art. 1810, which governs directed verdicts, provides in part:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made.
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Lott v. Lebon, 96-1328, p. 4 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 615. The question to be asked by the court is not whether mover proved its case by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of the mover’s opponent. Descant v. Administrators of Tulane Educ. Fund, 95-2127, p. 14 (La.App. 4 Cir. 1/21/98), 706 So.2d 618, 627. The jurisprudence provides, however, that “when a | defendant, rather than rest upon its motion for directed verdict, introduces evidence after the denial of that motion, the defendant is deemed to have abandoned the motion and the evidence in the case is judged on the entirety of the record.” Jackson v. Quick, 543 So.2d 552, *706 554 (La.App. 4 Cir.1989); Maraist and Lemmon, 1 La. Civ. L. Treatise, Civil Procedure § 11:8 (1999). Here, the record shows that the defendants did not elect to rest on their motions, but exercised their rights to present evidence after their motions were denied. Thus, we deem as abandoned the defendants’ motions for directed verdicts and the issue is not preserved for appellate review.
V
In this Part, we consider the defendants’ remaining assignment of error addressed to the trial judge’s ruling which allowed the introduction of Mrs. Duncan’s medical expenses during her re-direct examination. The defendants argue that the medical bills from Dr. Haydel were not mentioned during cross-examination and should not have been allowed into evidence on re-direct.
“A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case.” La. C.E. art. 611 D. “When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.” Id.
The judge ultimately overruled the defendants’ objection, finding that the defense counsel had raised the issue on cross-examination by asking how many visits Mrs. Duncan had made to the chiropractor, which information was 1 sdiscernable from the medical bills. The defendants also asked on cross-examination how frequently Mrs. Duncan visited the chiropractor during specific months, which chiropractor saw Mrs. Duncan on specific dates, and which chiropractor wrote Mrs. Duncan’s medical reports on which dates. Although the medical bills showed the charges for medical services, the bills also showed the timing and frequency of Mrs. Duncan’s visits, which were the subject of the cross-examination.
The trial judge acted within her discretion when she allowed the evidence. See La. C.E. art. 611 D. Accepting, for the sake of argument, that the monetary amount charged for each visit was a separate matter in the case, it was still proper for the judge to allow the introduction of the evidence, provided that “the other parties [were] provided an opportunity to recross on such matters.” Id. The defendant’s contention, therefore, would be more properly described as a denial of their remedy of an opportunity to recross-examine the witness after the plaintiff has introduced new evidence on her re-direct-examination.
“It is generally stated that the matter of permitting recross-examination is in the sound discretion of the trial judge and in the absence of some showing of an abuse of that discretion, and resulting prejudice, his ruling will not be disturbed on appeal.” State v. Cordier, 297 So.2d 181, 184 (La.1974). The defendants, therefore, would need to show both an abuse of discretion and resulting prejudice. The defendants did not request to recross-examine the witness after the judge overruled their objection to the introduction of Mrs. Duncan’s medical bills. Because the defendants did not request to recross-examine Dr. Haydel or assert any actual prejudice resulting from their lack of a recross-examination, we find the defendants have not met their burden of proving the trial judge’s error.
JlVI
In this final Part, we review the defendants’ assignments of error related first to the jury’s assessment of general damages for mental anguish and second to the assessment of special damages for lost *707 wages and future medical expenses. General damages are those which “may not be fixed with pecuniary exactitude.” Guillory v. Lee, 09-0075, p. 14 (La.6/26/09), 16 So.3d 1104, 1117. “Special damages are those which have a ready market value,’ such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages.” Id. at p. 16, 16 So.3d at 1118. “In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. Civil Code art. 2324.1.
A
The standard of review for an award of mental anguish is abuse of discretion when the damages for mental anguish accompany an award compensating physical injury. Wilson v. Magee, 367 So.2d 314, 316 (La.1979). In Wilson the Supreme Court reversed the appellate court’s decision, which reduced the award of general damages from $50,000 to $20,000, and reinstated the trial court’s award, holding “that there was no abuse of the much discretion’ vested in the jury when it awarded Ms. Wilson $50,000 in general damages.” The general damages in Wilson compensated Ms. Wilson for “past, present and future pain, suffering, mental anguish, permanent disfigurement and future disability.” Id. at 315. Mrs. Duncan’s award for mental anguish, likewise, accompanies physical injury.
The trial court’s practice of listing physical pain and mental anguish as separate entries on an interrogatory to the jury does not transform the damages for mental anguish from general to special damages such that the “much discretion” | mthat “must be left to the judge or jury” should be taken away. See La. Civil Code art. 2324.1. In determining whether the trier of fact has abused its discretion, an appellate court looks at all categories of general damages together to determine whether, in toto, they are insufficient or excessive. See Flemings v. State, 07-1290, p. 19 (La.App. 4 Cir. 8/26/09), 19 So.3d 1220, 1232 (finding that an award for general damages was not excessive where particular elements of the award for general damages were challenged for excessiveness, but the excessiveness of the total award for general damages was not challenged).
The burden for proving mental anguish varies according to whether the plaintiff is seeking damages for physical injuries as well as mental anguish or for mental anguish alone.
If a plaintiff seeks damages for mental anguish alone, that is, without physical injury, he has a much more onerous burden to meet. The “general rule followed by the great majority of jurisdictions” is that “if the defendant’s conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance.” Moresi v. State, Through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1095 (La.1990). Louisiana, however, has allowed deviations from the above “general rule,” and all of these deviations “have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Id. at 1096. Some examples of events for which an award for mental distress has been awarded without the presence physical injury are the mishandling of corpses, negligent transmission of a death announcement, and great fear for one’s personal safety. Id.
|, |“When a defendant’s negligent conduct causes the victim physical injury as well as emotional distress, the damages *708 resulting from the negligent infliction of emotional distress have traditionally been recoverable, as in a wrongful death action or any typical personal injury action.” Crawford, 12 La. Civ. L. Treatise, Tort Law § 28:3 (2d ed.). When physical injuries are present, “[t]o succeed in a claim for negligent infliction of emotional distress, a claimant must show that (1) the defendant’s conduct is negligent and (2) such conduct caused mental disturbance accompanied by physical injury, illness, or other physical consequences.” Barringer v. Robertson, unpub., 07-0802 (La.App. 1 Cir. 10/31/08), 2008 WL 4763539, citing Moresi, at 1095.[3]
The cases cited by State Farm in support of its position that Mrs. Duncan has not presented competent evidence all involve cases in which the plaintiff suffered no physical injury. State Farm cites cases involving “seismic trespass,” property damage, and damage to one’s credit rating. Ms. Bartholomew and GEICO do not cite any statute or cases in them brief in support of their position; they assert simply that there was no evidence in support of the award.
Mrs. Duncan did not testify at great length about her mental disturbance; however, because her mental anguish accompanies physical injury, her burden at trial is much less onerous than that alleged by the defendants. Mrs. Duncan testified that she was unable to play with or to take care of her children on account of her injury. A jury could reasonably accept that Mrs. Duncan’s inability to interact with her children caused her mental disturbance. Mrs. Duncan need only | |2show that the defendants’ conduct was negligent and that her mental anguish accompanied physical injury.
In reviewing Mrs. Duncan’s award for mental anguish, we do not look at the excessiveness of the $5,000 award for mental anguish; we look at the exces-siveness of the total award for general damages, which is $55,000. In light of the injuries sustained by Mrs. Duncan and the “much discretion” of the jury in determining an appropriate monetary compensation, we find that the award of general damages is not excessive.
B
In this subpart we will discuss the special damages of past lost wages and future medical expenses and explain why we uphold the jury’s award of these special damages to Mrs. Duncan.
Review over an award of special damages requires a two-part analysis: “There must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong.” Kaiser v. Hardin, 06-2092, p. 12 (La. 4/11 /07), 953 So.2d 802, 810. We may modify an award of special damages only when there is “no reasonable factual basis for the trial court’s conclusions.” Id. at 810. As we will discuss, the trial court’s factual determination was reasonable and not “clearly wrong.”
Mrs. Duncan was awarded $2,500 for past lost wages. The defendants contend that Mrs. Duncan should not have been compensated for past lost wages because she has not presented evidence of what she would have made had she not been injured. The defendants attempted to prove that Mrs. Duncan’s injury did not cause her to leave her job driving a school bus at First Student but, instead, that she *709 left her job because her personal schedule conflicted with her work schedule. The | ^.defendants presented evidence that Mrs. Duncan had told her supervisors at First Student that she could no longer continue driving her route because she needed to be home to meet her children at 4:00 p.m., and her current route brought her home too late. Mrs. Duncan disputed this assertion in her own testimony, wherein she stated that she left her job at First Student because her injuries made driving a school bus physically too painful to continue working there.
When witnesses have presented factually different scenarios, “a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error’ or unless it is clearly wrong.’ ” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). “[A]nd where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. We do not overturn the jury’s reasonable credibility determination.
The defendants’ assertion that Mrs. Duncan has not shown what she would have made had she not been injured is also insufficient to defeat the award for past lost wages because the jury heard testimony at trial concerning Mrs. Duncan’s wages received from both of her employers. Mrs. Duncan was earning a minimum of $555 per week as a bus driver for First Student. Mrs. Duncan was unemployed for just over five months after leaving First Student and before starting her job at Lowe’s. During that period alone, Mrs. Duncan could have earned well over $10,000. Mrs. Duncan has also been on leave from her job at Lowe’s from June 1, 2010 through the date of her testimony at trial, September 21, 2010. Mrs. Duncan earned roughly $434 per week working at Lowe’s.
|14We find that there was a reasonable basis for Mrs. Duncan’s award of $2,500 for past lost wages, and the award was not clearly wrong.
We next turn to Mrs. Duncan’s award of future medical expenses.
Mrs. Duncan was awarded $20,000 for past and future medical expenses. The jury did not specify how much of that $20,000 was compensation for past medical expenses and how much was compensation for future medical expenses. The record, however, shows that Mrs. Duncan incurred $9,298 in medical expenses from Dr. Kennedy, Dr. Haydel, and Dr. Shamsnia. The record does not contain the medical bills from Dr. Waring or Dr. Vogel.
Regarding Mrs. Duncan’s award for future medical expenses, Dr. Kennedy, one of the chiropractors treating Mrs. Duncan, testified that during the course of his treating her, which spanned over one year, Mrs. Duncan had made only a mild recovery. Dr. Kennedy anticipated that he would be able to provide her only temporary relief in the future and that Mrs. Duncan would likely need to see a neurosurgeon for permanent improvement. Dr. Vogel, Mrs. Duncan’s treating neurosurgeon, testified that he was at a “differential diagnosis stage,” meaning that he had narrowed the source of Mrs. Duncan’s pain to one of two possible problems, but he could not assess specifically what treatment Mrs. Duncan would require in the future because he did not know what the problem was. Dr. Vogel stated that Mrs. Duncan would need to undergo a CAT scan before he can make his final diagnosis.
The jury heard clear expert testimony at trial that Mrs. Duncan will incur future *710 medical expenses, so the jury had a reasonable factual basis for an award. And we do not find that the jury was clearly wrong in its award.
JofiVII
In this Part, we address Mrs. Duncan’s assignments of error. Mrs. Duncan first argues that the trial court erred when it excluded Dr. Waring from testifying at trial and prohibited Mrs. Duncan from introducing Dr. Waring’s medical records into evidence. Mrs. Duncan unsuccessfully sought interlocutory review of these rulings and asks this Court to revisit these issues. Mrs. Duncan further argues that the trial court erred when it disallowed her testimony concerning Dr. Waring’s treatment. Because we apply two separate standards of review to her three related assignments, we will first address the two rulings which were the subject of prior applications for our supervisory review and then address the ruling pertaining to Mrs. Duncan’s proffered testimony about her treatment by Dr. Waring.
A
Mrs. Duncan initially asks this Court to revisit those pre-trial rulings that excluded Dr. Waring’s testimony and records from evidence. As noted, these rulings were the subject of three writ applications to this Court. In her first application for interlocutory writs, Mrs. Duncan sought review of the trial court’s ruling that granted the defendant’s motion in limine and excluded the testimony of Dr. Waring from trial. Tiffany Duncan v. Mary Bartholomew, et al., unpub., 10-1310 (La.App. 4 Cir. 9/17/10). Specifically, the trial court set a June 21, 2010, deadline for the exchange of witnesses and exhibits. Plaintiffs counsel failed to produce Mrs. Duncan’s witness and exhibit lists by the foregoing date. State Farm filed a motion in limine to exclude all of the plaintiffs witnesses and exhibits from trial. On August 19, 2010, the trial court granted State Farm’s motion and excluded Mrs. Duncan’s witnesses and exhibits. Mrs. Duncan filed a motion for new trial, wherein she argued that exclusion of all witnesses and exhibits was [ 1fiunduly harsh given that Dr. Waring was the only witness unknown to the defendants at the time the witness and exhibit list was initially due. The trial court subsequently vacated its prior ruling, and, on September 19, 2010, granted State Farm’s motion with respect to Dr. Waring only.
Mrs. Duncan subsequently sought timely emergency relief from this Court, which denied the writ application and held, “We find no abuse of discretion by the trial court.” Tiffany Duncan v. Mary Bartholomew, et al., unpub., 10-1310 (La.App. 4 Cir. 9/17/10).
In her second application for interlocutory relief, Mrs. Duncan sought review of the trial court’s judgment that excluded Dr. Waring’s medical records from evidence and prohibited other witnesses from discussing Dr. Waring’s treatment of Mrs. Duncan. Tiffany Duncan v. Mary Bartholomew, et al., unpub., 10-1323 (La.App. 4 Cir. 9/22/10). Specifically, Mrs. Duncan asserted that the defendants improperly filed a motion in limine on the morning of trial that sought the exclusion of Dr. Waring’s records and all testimony concerning Dr. Waring’s treatment from other witnesses. The trial court granted the motion and Mrs. Duncan sought interlocutory review of the exclusion. This Court, however, declined on September 22, 2010, to exercise its supervisory jurisdiction because the plaintiffs writ was deficient for failing to follow Rules 4-2, 4-3, and 4-5 of the Uniform Rules, Courts of Appeal.
Mrs. Duncan subsequently re-filed her writ application on September 23, 2010, in *711 conformity with the Uniform Rules. Tiffany Duncan v. Mary Bartholomew, et al., unpub., 10-1333 (La.App. 4 Cir. 9/24/10). Citing to La. R.S. 13:3714, concerning the admissibility of certain types of certified medical records, this Court granted writs and reversed that portion of the trial court’s ruling that 117excluded Dr. Waring’s records from evidence. The defendants applied for a rehearing, arguing that the issue was not whether the trial court erred in excluding certified medical records, but whether the trial court erred in excluding the records of a witness who was excluded from testifying because Mrs. Duncan failed to timely list him as a witness. This Court granted the defendants’ request for a rehearing, recalled its prior ruling, and denied writs, noting that the “trial court did not err by excluding the medical records.” Tiffany Duncan v. Mary Bartholomew, et al., unpub., 10-1333 (La.App. 4 Cir. 9/24/10).
On Appeal, Mrs. Duncan asks this Court to revisit our own rulings and the trial court’s actions and find that the trial court erred when it excluded Dr. Waring’s testimony and records from evidence. Under the law-of-the case doctrine, our prior rulings on Mrs. Duncan’s interlocutory writ has conclusive effects on subsequent proceedings.
The law-of-the-case doctrine is discretionary. Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158. The law-of-the-case doctrine or principle refers to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Scott v. American Tobacco Co., Inc., 09-0461, p. 4 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046, 1050.
This doctrine “may bar redetermi-nation of a question of law or a mixed question of law and fact during the course of a judicial proceeding.” Maraist and Lemmon, 1 La. Civ. L. Treatise, Civil Procedure § 6:7 (1999); Bank One, N.A. v. Velten, 04-2001, pp. 5-6 (La.App. 4 Cir. 8/17/05), 917 So.2d 454, 458. The law-of-the-case doctrine, rather than res judicata, is the proper legal principle for | ^describing the relationship between prior judgments by trial and appellate courts rendered within the same case. Bank One, 04-2001, p. 6, 917 So.2d at 458-459.
The policy reasons behind this doctrine include avoidance of re-litigation of an issue, consistency of result in the same litigation, and promotion of efficiency and fairness to the parties “by affording a single opportunity for the argument and decision of the matter at issue.” First Bank and Trust v. Duwell, 11-0104, p. 5 (La.App. 4 Cir. 5/18/11), 70 So.3d 15, 19.
While the law-of-the-case doctrine as a general rule precludes reconsideration of a court’s previous determination of an issue on a prior appeal, the doctrine is inapplicable in cases of palpable error or where manifest injustice would occur. Keaty v. Raspanti, 96-2839, p. 4 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085, 1087. That is, we have the discretion to ignore the law-of-the-case doctrine if on subsequent appeal or review the prior ruling is revealed to constitute palpable error.[4] First *712 Bank and Trust, 11-0104, p. 5, 70 So.3d at 19. Put differently, reconsideration of a previously decided issue “is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results.” State v. Davis, 03-488, p. 6 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 641 n. 2. See also Hutchison v. Murphy Oil USA, Inc., 04-2648, p. 1 n. 2 (La.1/14/05), 892 So.2d 569, 570 (Calogero, C.J., 119concurring in the denial of certiorari) (“This doctrine, however, should apply only when the issue has been fully and properly considered.”).
In matters of discovery, such as whether a witness has been listed in a timely manner, decisions of the trial court should not be disturbed in the absence of an abuse of discretion. Harwell v. Haspel-Kansas Investments Partnership, 598 So.2d 1284 (La.App. 4 Cir. 4/30/92). Specifically, where a pre-trial order has not been complied with, as is the case here, it is within the trial court’s discretion to disallow witnesses, expert or not, from testifying. St. John Baptist Church of Phoenix v. Thomas, 08-0687, p. 10 (La.App. 4 Cir. 12/3/08), 1 So.3d 618, 625. Our review of the record convinces us that Mrs. Duncan has not shown palpable error in our earlier decisions or an abuse of discretion in the trial court’s rulings.
B
In her final assignment of error, Mrs. Duncan asserts that the trial court erred when it refused to allow her to testify about Dr. Waring’s medical treatment and asks this Court to accept her own proffered trial testimony concerning Dr. Waring’s treatment. The ruling at issue stems from the trial court’s actions with respect to the motion in limine filed by defendants on the morning of trial. With regard to admission of evidence at trial, a trial court is allowed great discretion, and determinations to admit or exclude evidence will not be reversed on appeal absent an abuse of that wide discretion. Munch v. Backer, 10-1544, p. 3 (La.App. 4 Cir. 3/23/11), 63 So.3d 181, 185. We have reviewed the plaintiffs proffered testimony under an abuse-of-discretion standard. We agree with Mrs. Duncan that the trial court erred when it prohibited her from discussing her treatment by Dr. Waring. In her proffer she testified about receiving three injections in her back, which she described as painful. Having considered Mrs. Duncan’s proffer, we 12(|find, however, that the restriction of her testimony on this point does not affect the amount of general damages awarded to her by the jury. Accordingly, this assignment of error lacks merit.
CONCLUSION
Finding no reversible error, we affirm the judgment of the district court. We have examined those assignments of error raised by the defendants in their answer to Mrs. Duncan’s appeal, and find them mer-itless. After reviewing the record, we con- *713 elude that Mrs. Duncan perfected a timely devolutive appeal and deny State Farm’s request to dismiss her appeal. We also find that the trial court did not abuse its discretion when it admitted Mr. Sang’s deposition into evidence, or allowed the introduction of medical bills into evidence during Mrs. Duncan’s redirect examination. We further conclude that the jury did not abuse its discretion in its award of mental anguish damages or commit manifest error in its reasonable award of special damages for lost wages and future medical expenses.
With respect to Mrs. Duncan’s specific assignments of error, we have examined the trial court’s exclusion of Dr. Waring’s testimony and records from trial, applied the law-of-the-case doctrine, and find no abuse of discretion in the trial court’s actions or palpable error in this Court’s subsequent rulings. We have also reviewed the trial court’s ruling that prohibited Mrs. Duncan from testifying about her treatment with Dr. Waring. While we find that the trial court’s limitation on Mrs. Duncan’s testimony was an abuse of discretion, our review of the record indicates that the restriction of Mrs. Duncan’s testimony on this point does not affect the amount of general damages awarded to her by the jury-
I ⅞1 DECREE
The judgment of the district court in favor of Tiffany Duncan and against the defendants, State Farm Mutual Automobile Insurance Company, and Mary Bartholomew and her insurer, Government Employees Insurance Company, is affirmed. Each party to bear its own costs on appeal. See La. C.C.P. art. 2164.
AFFIRMED

. The actual title of Mrs. Duncan’s motion was “Notice of Intention to File Devolutive Appeal”; however, the substance of the motion was sufficient to perfect a devolutive appeal. “An order of appeal may be granted on oral motion in open court, on written motion, or on petition.” La. C.C.P. art. 2121. "Louisiana law expressly provides that ‘[n]o technical forms of pleading are required,’ and that '[ejvery pleading shall be so construed as to do substantial justice.’ La.Code Civ. Proc. arts. 854, 865. Accordingly, it is the substance rather than the caption of a pleading that determines its effect.” Brown v. Harrel, 98-2931, p. 4 (La.App. 4 Cir. 8/23/00), 774 So.2d 225, 228.

. Initially, we note that although the defendants moved for an involuntary dismissal pursuant to La. C.C.P. art. 1672, La. C.C.P. art. 1810 provides the basis for a directed verdict at the close of an opposing party’s case in an action tried before a jury. Nevertheless, that error is one of form rather than substance, as the ultimate object of both motions is the same. See Tate v. Tate, 09-2034, pp. 3-4 (La.App. 1 Cir. 6/11/10), 42 So.3d 439, 442.

. The unpublished opinions of the supreme court and the courts of appeal may be cited as authority. La. C.C.P. art. 2168.

. The jurisprudence reveals scant instances of palpable error. See Wascom v. American Indemnity Corp., 383 So.2d 1037 (La.App. 1 Cir. 1980), wherein the court of appeal declined to apply the law of the case doctrine to bar reargument of an issue on a principal that had been subsequently reversed in another case; Moncrief v. Panepinto, 540 So.2d 1304 (La.App. 5 Cir. 1989), where the court held that the doctrine did not require a trial court *712 to adhere to a ruling of the court of appeal when that ruling was subsequently overruled by the Supreme Court; Vincent v. Ray Brandt Dodge, 94-291 (La.App. 5 Cir. 3/1/95), 652 So.2d 84, where the court of appeal disregarded a prior writ denial on the issue, and held that it was palpable error for a trial court to strike a jury on the morning of trial; Tamporello v. State Farm Mut. Auto. Ins. Co., 95-458 (La.App. 5 Cir. 11/15/95), 665 So.2d 503which involved an issue similar to the one addressed in Vincent; and Balashov v. Baltic Shipping Co., 96-1129 (La.App. 4 Cir. 1/22/97), 687 So.2d 1101, where this Court, after additional analysis, concluded on appeal that a prior writ denial, on whether La. R.S. 13:3485 required a foreign corporation to register with the Secretary of State, was palpable error.